**STATE of Missouri, Respondent,**

v.

**Clarence Arthur TREMAINE, Appellant.**

**No. WD 70670.**

Missouri Court of Appeals, Western District.

July 27, 2010.

Emmett D. Queener, Esq., Columbia, MO, for appellant.

Shaun J. Mackelprang, Esq., and Jayne T. Woods, Esq., Jefferson City, MO, for respondent.

Before: LISA WHITE HARDWICK, P.J., and JAMES M. SMART, JR. and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellant Clarence Tremaine was convicted in the Boone County Circuit Court of two offenses: possession of child pornography under § 573.037, RSMo, and promoting child pornography in the first degree by offering to disseminate it, § 573.025, RSMo. Tremaine makes two arguments on appeal. First, he claims the jury lacked sufficient evidence to conclude that he offered to disseminate child pornography. Second, he argues that the trial court plainly erred in simultaneously convicting him of both possession of, and promoting, child pornography, because the possession of child pornography is a lesser included offense of promotion of child pornography by offering to disseminate it. Tremaine accordingly argues that his conviction of both offenses violates his right to be free from double jeopardy as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Finding neither of Tremaine's arguments persuasive, we affirm.

## Factual Background[1]

This case arose out of a search warrant executed at the Tremaine residence by Detectives Andy Anderson and Tracy Perkins of the Boone County Sheriff's Department, and Detective Michael Lederle of the Columbia Police Department. The detectives had received information from other law enforcement agencies that an Internet Protocol (or "IP") address associated with Tremaine's residence had transferred computer files containing known child pornography. Detectives visited the residence and spoke with Tremaine on his front porch. The detectives identified themselves and told Tremaine that they were investigating the possession and distribution of child pornography. Tremaine admitted that he had a computer in his home that was connected to the internet, and invited the detectives inside.

Once inside, Tremaine admitted that he had downloaded files containing child pornography using software known as LimeWire. Tremaine said "that he first found child pornography through the system quite some time ago," "he guessed a little bit less than a year, and demonstrated that he knew how this (LimeWire) program worked." Tremaine signed a consent form to search his computer. Detectives then presented Tremaine with the search warrant and began their search.

During the search, the detectives confiscated Tremaine's computer. They later conducted a forensic examination of the computer's hard drive at their headquarters. The forensic search of Tremaine's computer revealed the existence of the LimeWire program. It also revealed the presence of numerous files containing child pornography, all of which were located in a folder labeled "Incomplete." Tremaine's computer was set to permit the sharing of files located in his Incomplete folder with other users on the LimeWire network.

The jury found Tremaine guilty of both counts with which he was charged: promoting child pornography by offering to disseminate it; and possession of child pornography. The circuit court sentenced him to four years on the possession count, and five years for promotion, with the sentences to run concurrently. This appeal follows.

## Analysis

If the evidence was insufficient to convict Tremaine of promoting child pornography, this would moot his double jeopardy claim, which attacks his simultaneous conviction of both possession and promotion offenses. We accordingly address his sufficiency-of-the-evidence claim first.

### I.

"Where the appellant challenges the sufficiency of the evidence supporting a conviction, '[a]ppellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt.'" *State v. Donahue*, 280 S.W.3d 700, 701 (Mo.App. W.D. 2009) (en banc) (citation omitted). In resolving a sufficiency-of-the-evidence claim, we review the evidence in the light most favorable to the State. *State v. O'Brien*, 857 S.W.2d 212, 215–16 (Mo. banc 1993). "Thus, evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged." *Id.* at 216. "Conversely, the evidence and any inferences to

1. The facts are described in the light most favorable to the jury's verdict, consistent with the governing standard of review. Additional facts are detailed in our discussion of Tremaine's sufficiency-of-the-evidence claim.

be drawn therefrom that do not support a finding of guilt are ignored." *Id.* In conducting our review, we are mindful that "[t]he appellate court must not act as a 'super juror' exercising veto power, but, rather, must give great deference to the trier of fact." *Donahue,* 280 S.W.3d at 701.

As it existed at the time of Tremaine's alleged offense, § 573.025.1, RSMo 2000 provided:

> A person commits the crime of promoting child pornography in the first degree if, knowing of its content and character, such person possesses with the intent to promote or promotes obscene material that has a child as one of its participants or portrays what appears to be a child as a participant or observer of sexual conduct.

"Promote" is defined by statute to mean "to manufacture, issue, sell, provide, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same, by any means including a computer." § 573.010(15), RSMo Cum. Supp.2009.

In this case, the State charged Tremaine with violating § 573.025.1 based on the allegation that, "knowing its content and character[,] he offered to disseminate obscene material consisting of videos that portray what appears to be a child as a participant in sexual conduct."

■ The terms "offer" and "disseminate" are not defined by statute. Absent a statutory definition, words are given their plain and ordinary meaning derived from the dictionary. *State v. Eisenhouer,* 40 S.W.3d 916, 919–20 (Mo. banc 2001). "Offer" is defined to mean "to present for acceptance or rejection," "hold out," "to bring or put forward for action or consideration," or "to make available or accessible." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1566 (1993). "The term disseminate is defined as 'to scatter far and wide' or 'promulgate widely.'" *State v. Kamaka,* 277 S.W.3d 807, 815 (Mo.App. W.D.2009).

Reviewing the evidence in the light most favorable to the jury's verdict, and ignoring contrary evidence and inferences, we conclude that the evidence was sufficient for the jury to find that Tremaine offered to disseminate child pornography in the sense that he presented for acceptance or rejection, held out, and made available, such materials for widespread sharing via the LimeWire network. More specifically, Tremaine allowed other LimeWire users access to the child pornography files on his computer, and invited them to take, or download, those items from him.[2]

■ The State argues at the outset that it is unnecessary for it to prove that Tremaine knew that he was offering the child pornography files on his computer to other internet users. The State notes that § 573.025.1, as it existed in 2007, specified that an individual must "know[ ] of [the child pornography's] content and character" to be guilty of promotion of child pornography, but does not otherwise specify a required mental state.[3] Under

---

**2.** The State offered into evidence seven different computer files, each of which was found in the "Incomplete" folder on Tremaine's computer. Tremaine stipulated at trial that the files contained child pornography, and from the graphic names of the files, as well as the evidence that at least some of the files had been viewed using the computer's media player, the jury could reasonably find that he knew that the files contained child pornography.

**3.** The quoted language was deleted from § 573.025.1 in 2009. *See* H.B. 62, 2009 Mo. Laws 237, 269.

§ 562.021.2, RSMo 2000, "[i]f the definition of an offense prescribes a culpable mental state with regard to a particular element or elements of that offense, the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the offense." According to the State, § 562.021.2 prevents this Court from reading § 573.025.1 to require that the State prove that Tremaine *knowingly* offered to disseminate child pornography. We need not resolve this issue, however. As we explain below, the evidence here was sufficient for the jury to find that Tremaine was aware that he was operating his computer in a way that made files containing child pornography available to other users, even if such awareness were necessary to sustain a conviction.

We begin with a brief description of the LimeWire software. LimeWire is a peer-to-peer ("P2P") computer application that allows users to trade computer files (generally audio and video files) over the Internet.[4] LimeWire connects users to the Gnutella and Bit Torrent P2P networks, providing users access to files which other users choose to share over the networks. Users begin at LimeWire's website. There, they download to their computer the software necessary for file sharing by activating an installation "wizard" that walks the user through a step-by-step set-up process. Once LimeWire is installed, the user can manually change default set-tings which are pre-set in the software to whatever particular settings the user wants for his or her computer.

To search for available files, LimeWire users enter a search term into a dialogue box, and the LimeWire network, in conjunction with Gnutella or similar software, assembles a list of files fitting the search terms which are available for download from other users' computers. The user then double clicks on a particular file to download it from another computer which is set to permit the sharing of such files. LimeWire assembles complete files for the requesting user by collecting pieces of the selected file, potentially collecting individual pieces from the computers of many different users which have the requested file. LimeWire verifies that it is accessing pieces of the correct file by means of a Secure Hash Algorithm (or "SHA 1") value which uniquely corresponds to an individual computer file.[5] By default, pieces of computer files are initially downloaded into the "Incomplete" folder on the requesting user's computer; once a complete file is assembled, it is automatically transferred into another default folder called "Shared." However, LimeWire users determine whether the files in these folders are shared and actually available to other users. Thus, a user can select an option that precludes other users from downloading materials from his computer.

The evidence would permit the jury to have found that Tremaine was aware that

---

**4.** As LimeWires website explains: LimeWire is the world's most popular peer-to-peer file sharing program. With over 50 million unique monthly users, the software is downloaded hundreds of thousands of times every day and boasts millions of active users at any given moment." http://www.LimeWire.com/about (last visited July 15, 2010).

**5.** An SHA 1 value is an alphanumeric signature which identifies an individual computer file, regardless of how the file is named on an individual computer. Besides being used by the search function of the Gnutella network, and by LimeWire, law enforcement agencies track the distribution of files containing known child pornography using the files' SHA 1 value, and can identify the Internet Protocol (or "IP") address downloading particular files by the same means.

the child pornography files he downloaded had come from the computers of other individual LimeWire users. Detective Anderson testified that the Gnutella network, which performs a search function in conjunction with LimeWire, "will point to a bunch of computers and say, 'Here's a list of the files that we found.' " The fact that Tremaine knew he downloaded files from individual users would support the inference that he also knew the files which he possessed would be available for sharing with others.

The evidence also indicates that the LimeWire software on Tremaines computer was set to allow sharing of files both from the Shared folder on his computer, and from the Incomplete folder in which the files containing child pornography were found. Detective Anderson testified that LimeWire users possess the specific option to either share or keep private completed and/or partially downloaded files. Thus, Tremaine had the option to keep partial and complete downloads private. Yet, the screenshots from Tremaines computer which were admitted into evidence reveal that the following options were enabled: Share finished downloads and Allow partial sharing. The end result is that the partially downloaded files on Tremaines computer which contained child pornography were available to other users on the LimeWire network.

Indeed, the evidence indicated that other LimeWire users were actually accessing files in the "Incomplete" folder of Tremaine's computer—the same folder which contained the child pornography files—at the time the detectives seized his computer. Tremaine's own expert testified that "37 of the files that were being accessed [at the time of the seizure of Tremaine's computer] were found in the Incomplete folder." The screenshots taken from Tremaine's computer which were admitted into evidence show that the LimeWire interface reports the status of ongoing uploads and downloads, including the speed (in kilobytes of data per second) at which uploading or downloading is occurring.

Detective Anderson testified that, during their first encounter, Tremaine indicated a working knowledge of the LimeWire software:

Q. And did he tell you how he used his LimeWire program?

A. He used it to download files.

. . . .

Q. Did he indicate to you that he knew what it was for, what LimeWire was for?

A. Yes. Yes.

Q. Okay. And how did he do that?

A. Well, he just had a knowledge of— he indicated that he had downloaded files for quite some time. He had indicated that he first found child pornography through the system quite some time ago, he guessed a little bit less than a year, and demonstrated that he knew how this program worked.

The testimony would permit the jury to draw the inference that Tremaine had actively enabled the sharing of the files in his "Incomplete" folder. As discussed above, Tremaine's LimeWire program was set to permit the sharing of incomplete files. While Detective Anderson testified that "there's also a setting on LimeWire *that I believe is by default, on the newer versions*, that will allow you to share partial files," this statement did not establish that the LimeWire program had set Tremaine's computer to share files in the "Incomplete" folder automatically and without his knowledge. Indeed, the testimony of defense expert Greg Chatten suggests Tremaine's active involvement in determining which (if any) of his files would be shared.

Chatten testified that, *"[f]rom whatever setting you've put in LimeWire* is to where your—what folder or folders you wish to share, yes." Hence, the jury could reasonably conclude that Tremaine voluntarily enabled the sharing of files in his "Incomplete" folder, which constituted the offer to disseminate child pornography.

The jury's verdict is also supported by the inconsistent statements Tremaine made prior to and at trial concerning his level of familiarity with the LimeWire program, and as to how that program, and the child pornography files, ended up on his computer. Detective Anderson testified that, during their initial encounter, Tremaine specifically admitted that he had used LimeWire to download files, including files containing child pornography, and that he had located child pornography using the search terms "7yo" and "11yo" (which refer to seven- and eleven-year-old participants). Detective Anderson testified that the forensic examination of Tremaine's computer reflected that his Windows Media Player program had been used recently to view at least certain of the child pornography files.

Detective Anderson also testified that Tremaine "specifically said that no one had unmonitored access to his computer." Tremaine explained to the detective "that one time he allowed a friend to download on his computer, but he was there and watched it and knew that he did not download child pornography. He also said that he allowed his children to play games on his computer, but he was always present." Detective Anderson testified that, during their meeting at Tremaine's home, Tremaine made no claim that his home had been burglarized, and did not show the detective any damaged exterior door, or claim that anyone had broken into his house through an exterior door.

Tremaine's testimony at trial was importantly different. He testified that a person he met at a bar, whom he knew only as "Gary," set up the computer for him. Tremaine also testified that Gary came to his house "a couple times" to assist Tremaine with computer problems. Tremaine testified that, "quite a few times," he invited people he met at a bar over to his home, and implied that he often left these visitors unsupervised in his home while he went to purchase alcohol. Tremaine also claimed that he had told Detective Anderson that intruders had been entering his home while Tremaine was at work, and that he had showed the detective marks on a back door consistent with unlawful entry. Tremaine testified at trial that he "didn't, really" download audio files onto his computer; instead, "[a] lot of my friends and stuff did that." Tremaine claimed further that he "always had help" downloading videos. When asked if he had downloaded child pornography, Tremaine responded vaguely that "I don't think I did," and insisted that he had never viewed child pornography on his computer.

During his trial testimony Tremaine also sought to explain away the incriminating statements he had made to Detective Anderson. When asked if he had admitted to the detective that he had downloaded child pornography, Tremaine claimed that "I wasn't paying attention to what he was saying, because I was trying to keep a[n] eye on my kids." While he ultimately may have agreed with Detective Anderson's assertions that he searched for child pornography using terms like "7yo" and "11yo," Tremaine testified that he did so only because the detective "brought it up five million times"; according to Tremaine, Detective Anderson "wouldn't listen to me, and he just kept going over the same questions."

Of course, the jury was entitled to believe Detective Anderson's testimony as to Tremaine's incriminating statements, and completely disregard Tremaine's contrary trial testimony. *State v. Hobbs,* 106 S.W.3d 498, 509 (Mo.App. W.D.2003). But more than this, if the jury disbelieved Tremaine's efforts at trial to minimize his own familiarity with LimeWire, and his involvement in downloading child pornography, its rejection of Tremaine's trial testimony provides important additional evidence supporting the guilty verdicts. *See, e.g., State v. Speaks,* 298 S.W.3d 70, 83 (Mo. App. E.D.2009) ("[E]xculpatory statements, when proven false, demonstrate consciousness of guilt."); *Jones v. State,* 197 S.W.3d 227, 233 (Mo.App. W.D.2006).

Based on the evidence described above, we believe a rational fact-finder could find that Tremaine set up the LimeWire software on his computer and was familiar with its operation, knew that he was downloading child pornography files from other individual computer users, enabled the sharing of files in the "Incomplete" folder of his computer, and was aware that by doing so other users would become aware of, and have access to, those files. This evidence is sufficient to support Tremaine's conviction for promoting child pornography by offering to disseminate it.

At points in its briefing and argument the State suggests that Tremaine's use of the LimeWire file-sharing program, standing alone, would be sufficient to establish his guilt for promotion of child pornography. As discussed above, the evidence in this case does not require us to go so far. We note that in federal cases involving similar issues, including one on which the State relies, the evidence has disclosed far more than the mere use of a file-sharing program to establish the defendant's guilt for distribution or transfer of child pornography. *See, e.g., United States v. Dyer,* 589 F.3d 520, 522, 531 (1st Cir.2009) (emphasizing that defendant admitted he knew that other users were accessing his files, and knew how to disable other users' access to such files; specifically stating that the outcome of each case depends upon the particular facts and not on a *per se* rule); *United States v. Sewell,* 513 F.3d 820, 822 (8th Cir.2008) (defendant conceded "that he distributed child pornography using Kazaa"); *United States v. Shaffer,* 472 F.3d 1219, 1222 (10th Cir.2007) (defendant admitted in pretrial interview that he knowingly downloaded child pornography using Kazaa software, "knew that other people had downloaded child pornography from him" and sometimes left his computer running to enable such sharing, and "admitted that he stored images of child pornography in his Kazaa shared folder" because "Kazaa gave him 'user points' and various incentive rewards corresponding to how many images other users downloaded from his computer").

## II.

Tremaine also argues that the circuit court violated his right to be free from double jeopardy by accepting verdicts for both possession of, and offering to disseminate, child pornography, because the former is a lesser included offense of the latter. We disagree.[6]

6. Despite statements in numerous prior cases that a double jeopardy claim resolvable on the face of the record is not waivable, *e.g., State v. Johnson,* 245 S.W.3d 288, 293 (Mo.App. W.D. 2008), the State argues that we should hold to the contrary, and find that Tremaine waived his double jeopardy claim by failing to raise it below. Because the State concedes that Tremaine would at a minimum be entitled to plain-error review under Rule 30.20, and our conclusion that Tremaine's double jeopardy claim does not justify reversal, we need not further address the State's waiver argument.

■ Protections against double jeopardy arise from the Fifth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, which provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." This provision protects defendants against (1) successive prosecutions for the same offense after either an acquittal or a conviction, and (2) multiple punishments for the same offense. *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998). "Multiple convictions are permissible if the defendant has in law and in fact committed separate crimes." *Id.*

■ In resolving a multiple-punishment double jeopardy claim, Missouri courts apply the "same-element" test, asking "whether each offense contains an element not contained in the other; if not, the Double Jeopardy Clause bars a successive prosecution." *State v. Burns*, 877 S.W.2d 111, 112 (Mo. banc 1994). Therefore, "we simply determine the elements of the offenses at issue and compare them.... If both offenses have elements that the other lacks, then the guarantee does not bar the subsequent prosecution." *State v. Kamaka*, 277 S.W.3d 807, 813 (Mo.App. W.D. 2009) (citations and internal quotation marks omitted). "Additionally, this test requires that the court 'focus on the statutory elements, rather than on the evidence adduced at trial.'" *Id.* (citation omitted); *see also State v. Daws*, 311 S.W.3d 806, 808 (Mo. banc 2010) ("The focus is on the elements of the offenses at issue, not the underlying conduct that resulted in the defendant being charged.").

Tremaine argues he could not be convicted of both crimes because possession of child pornography is a lesser included offense of promotion of child pornography by offering to disseminate it. He relies heavily on *Kamaka*, in which we found that possessing child pornography was a lesser included offense of promoting child pornography by disseminating computer video files, because it was impossible for a defendant to disseminate the files without first possessing them. 277 S.W.3d at 815. Thus, we held that the State's attempted prosecution of both possession and promotion charges involving the same computer files subjected the defendant to double jeopardy. *Id.*

However, *Kamaka* specifically noted "that *our holding refers only to a charge of promotion by dissemination* and express[ed] no opinion on whether possession is a lesser included offense when the promotion charge is based on any of the other methods of promotion provided by section 573.010(15)." *Id.* at 815 n. 5 (emphasis added). Here, the State charged Tremaine with promotion by *offering to disseminate* child pornography, a different method of promotion than that involved in *Kamaka*. As a result, while *Kamaka* is instructive, it is not controlling.

■ A lesser included offense is defined as an offense "that is 'established by proof of the same or less than all the facts required to establish the commission of the offense charged.'" *State v. Angle*, 146 S.W.3d 4, 11 (Mo.App. W.D.2004) (quoting § 556.046, RSMo). Put simply, "a 'lesser offense is not included in a greater unless it is impossible to commit the greater offense without first committing the lesser.'" *State v. Thompson*, 147 S.W.3d 150, 159 n. 3 (Mo.App. S.D.2004) (quoting *State v. Kirkland*, 684 S.W.2d 402, 406 (Mo.App. W.D.1984)); *see also State v. Derenzy*, 89 S.W.3d 472, 474 (Mo. banc 2002).

*Kamaka* focused on the specific method of "promotion" at issue in that case—"dissemination"—and held that "the term 'disseminate' necessarily involves some form of possession prior to or during the act of dissemination." 277 S.W.3d at 815. *Ka-*

*maka* relied on *State v. Derenzy*, 89 S.W.3d 472 (Mo. banc 2002), which found possession of marijuana to be a lesser included offense of delivery of a controlled substance within 2,000 feet of a school. In *Derenzy*, the relevant statute defined "delivery" to require a "transfer" of the contraband. The Court concluded:

> Regardless of the method of transfer, one cannot deliver a substance without the power and intention to exercise dominion or control over the substance, necessitating some form of possession. Anyone who has delivered a controlled substance has necessarily possessed that substance. Therefore, the offense of possession of marijuana is a lesser included offense of delivery of a controlled substance within 2,000 feet of a school.

*Id.* at 474.

■ Applying the same analysis as *Kamaka* and *Derenzy*, the relevant issue here is whether one can promote child pornography by offering to disseminate it (the specific offense charged against Tremaine) without actually possessing it. We conclude that it is entirely possible to hold child pornography out, put it forward for consideration by others, or make it accessible without actually possessing the child pornography oneself. For example, a person could post internet links to websites containing downloadable child pornography, and offer to facilitate the acquisition of that material, without possessing the illicit material himself. Similarly, a person could offer to provide child pornography meeting requesters' particular specifications, even though completing the transaction would require the offeror to first acquire, or create, materials meeting requesters' demands. Thus unlike in *Kamaka*, making an offer to disseminate child pornography does not "necessarily involve[ ] some form of possession prior to or during the act of" offering. 277 S.W.3d at 815.

*Kamaka* itself recognized a similar possibility. In *Kamaka*, the State argued that "a person could theoretically run an advertising campaign extolling the virtues of child pornography yet never possess any videos or images himself." 277 S.W.3d at 814. The Court responded by stating that, "[w]hile the State's example may support an argument that possession is not a lesser included offense of a promotion charge based on 'advertising,' the promotion charge against Kamaka specifically used the term 'disseminate.' " *Id.* "Because Platte County charged Kamaka with promoting child pornography by disseminating it," the Court was not required to decide "whether possession is a prerequisite for all of the terms included in the definition of 'promote.' " *Id.*

Like *Kamaka*, we focus on the actual method by which the State charged Tremaine with promoting child pornography: by offering to disseminate it. Because it is possible to offer to disseminate child pornography without first possessing it, possession of child pornography is not a lesser included offense of promotion of child pornography by offering to disseminate it. Therefore, given the specific offenses with which Tremaine was charged, the circuit court did not violate his right to be free from double jeopardy by entering a judgment convicting him of both possession and promotion of child pornography.

### Conclusion

The judgment is affirmed.

All concur.