

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED105824 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | |
| | ) | |
| DONALD A. FODRINI JR., | ) | Honorable Daniel G. Pelikan |
| | ) | |
| Appellant. | ) | Filed: March 12, 2019 |

Opinion

Donald A. Fodrini Jr. ("Fodrini") appeals from the judgment of the Circuit Court of St. Charles County following a bench trial in which he was convicted of one count of promoting child pornography in the second degree and twenty-four counts of possession of child pornography. On appeal, Fodrini only contests his conviction for promoting child pornography in the second degree. Fodrini argues the circuit court erred in finding him guilty of this offense because the court did not require the State to prove Fodrini's culpable mental state when he unintentionally and unknowingly provided child pornography to a police officer. We affirm.

Factual and Procedural History

Viewed in the light most favorable to the circuit court's judgment, the following evidence was presented at trial. *See State v. Chaney*, 460 S.W.3d 13, 14 (Mo. App. E.D. 2014).

In November 2014, Sergeant Adam Kavanaugh ("Sergeant Kavanaugh") of the St. Louis County Police Department identified a computer that was offering to distribute child pornography

over the internet by means of a peer-to-peer file-sharing program called Ares. Sergeant Kavanaugh successfully downloaded three images from the computer, two of which he determined were child pornography. After investigating the internet protocol (or "IP") address associated with the computer, police confirmed the IP address was located at Fodrini's residence.

Based on this evidence, on February 3, 2015, detectives with the St. Charles County Cyber Crime Task Force executed a search warrant at Fodrini's residence. The detectives informed Fodrini that they were investigating the possession and distribution of child pornography, and were looking for electronic devices in his home. During the search, the detectives seized Fodrini's personal computer as well as a thumb drive he had hidden in a nightstand. After agreeing to speak with the detectives, Fodrini admitted installing the Ares program on his computer, and using Ares to search for and download files containing child pornography. However, Fodrini stated he did not realize that Ares was a file-sharing program, or that other Ares users could access and download child pornography from his computer. Fodrini stated he had since deleted Ares from his computer because he "tried it" and "didn't really understand it." Fodrini could not recall when he deleted Ares, though, he stated he had the program for four or five months. The detectives subsequently arrested Fodrini.

A forensic examination of Fodrini's computer revealed he had previously installed Ares and downloaded files containing child pornography from other Ares users. While the Ares program and the files had since been deleted from Fodrini's computer, police were able to recover evidence of complete and incomplete downloads of child pornography as well as the graphic names of the files. Police also recovered the search terms Fodrini used to search for child pornography within Ares. Additionally, police found various terms Fodrini used to search Google for child pornography as well as bookmarked images depicting child pornography. Moreover, a forensic

examination of the thumb drive revealed it contained 4,200 images[1] and approximately twenty-seven videos of child pornography.

The State charged Fodrini with one count of promoting child pornography in the second degree, in violation of Section 573.035 RSMo 2000 (Cum. Supp. 2009),[2] and twenty-four counts of possession of child pornography, in violation of Section 573.037 RSMo 2000 (Cum. Supp. 2013). A bench trial was held. The State presented evidence that the purpose of the Ares program is to download and share files with other Ares users. Once Ares is installed, files downloaded through the program are automatically transferred to a "shared" folder on the user's desktop and, by default, are made available to other Ares users to download. Although the user has the option to change the default settings to prevent file sharing, in this case, Fodrini did not change the settings, which made the files in his "shared" folder available to other Ares users, and allowed Sergeant Kavanaugh to access and download the images of child pornography. By contrast, Fodrini's theory of defense was that he was unaware of Ares's default settings or that it was a file-sharing program, and, therefore, he could not have knowingly provided child pornography to Sergeant Kavanaugh.[3]

Prior to entering judgment, the circuit court asked the parties for additional briefing to address the issue of "how the use of a peer-to-peer file sharing network in this particular case complies with promoting, possession with intent to promote, and/or to promote child pornography." After the parties submitted their briefs, the circuit court found Fodrini guilty on all counts. At the sentencing hearing, the circuit court stated, "The facts in the trial were thin on

---

[1] The thumb drive contained over 12,000 pornographic images, 4,200 of which were identifiable child pornography as they showed genitalia. A majority of the remaining images were a mixture of child erotica and images of children in various stages of undress.

[2] All further statutory references are to RSMo (2000), unless otherwise indicated.

[3] A more detailed description of the Ares program as well as additional relevant facts will be set forth as needed in the Discussion section of this Opinion.

promoting but . . . it was resolved by reference to case law and statute." The circuit court sentenced Fodrini to concurrent terms of one year imprisonment for promoting child pornography, and ten years' imprisonment for each count of possession of child pornography. This appeal follows.

## Standard of Review

In reviewing the sufficiency of the evidence in a court-tried case, an appellate court's role is limited to determining whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty. *State v. Brooks*, 446 S.W.3d 673, 674 (Mo. banc 2014). This Court accepts as true all evidence favorable to the State, including all favorable inferences drawn therefrom, and disregards all evidence and inferences to the contrary. *State v. Wurtzberger*, 265 S.W.3d 329, 335 (Mo. App. E.D. 2008). Circumstantial evidence is given the same weight as direct evidence in considering the sufficiency of the evidence. *State v. Cerna*, 522 S.W.3d 373, 378 (Mo. App. E.D. 2017).

"When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (quoting *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)). Further, "this Court will not weigh the evidence anew since 'the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case.'" *State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008) (quoting *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002)).

## Discussion

In his sole point on appeal, Fodrini argues the circuit court erred in finding him guilty of promoting child pornography in the second degree because the court did not require the State to

4

prove Fodrini's culpable mental state when he unintentionally and unknowingly provided child pornography to a police officer. We disagree.

A person commits the offense of promoting child pornography in the second degree "if such person possesses with the intent to promote or promotes child pornography of a minor under the age of eighteen or obscene material portraying what appears to be a minor under the age of eighteen." Section 573.035.1. Here, the State charged Fodrini with violating Section 573.035 based on the allegation that Fodrini, "knowing its content and character, promoted child pornography by providing to another person, images that consisted of a visual depiction of two digital images showing a minor under the age of eighteen years as a participant in sexually explicit conduct by a lascivious exhibition of their genitals[.]"

The term "promote" is defined by statute to mean "to manufacture, issue, sell, provide, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same, by any means including a computer[.]" Section 573.010(15) RSMo 2000 (Cum. Supp. 2007). Additionally, while not statutorily defined, the dictionary defines "provide" as "to make ready" or "to supply for use." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1827 (2002).

At the outset, we note the parties contest whether Section 573.035 requires the State to prove Fodrini acted with a culpable mental state when he provided child pornography to Sergeant Kavanaugh. Fodrini argues Section 573.035.1 does not expressly require proof of a culpable mental state, and, therefore, the circuit court should have imputed a mental state of "purposely or knowingly," pursuant to Section 562.021.3. [4] As such, Fodrini maintains the circuit court

---

[4] Section 562.021.3 provides, in relevant part: "[I]f the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly; but reckless or criminally negligent acts do not establish such culpable mental state."

misapplied Section 573.035 when it failed to require the State prove he *purposely* or *knowingly* promoted child pornography. By contrast, the State argues that, because the legislature assigned a mental state to the penalty enhancement provision in Section 573.035.2,[5] as well as the first alternative in Section 573.035.1 (possession with *intent* to promote), but not to the second alternative of actual promotion, the legislature did not intend for the State to have the burden of proving Fodrini acted knowingly.

While we acknowledge the parties' arguments, we need not address this issue to resolve the case. Assuming without deciding that the State was required to prove Fodrini acted with a culpable mental state, we find there was sufficient evidence from which the circuit court could have found Fodrini knowingly provided child pornography to Sergeant Kavanaugh in that he understood how to operate Ares, was aware of its file-sharing capabilities, and used the program in a way that made child pornography readily available to other users to download. *See State v. Tremaine*, 315 S.W.3d 769, 773 (Mo. App. W.D. 2010) (similarly declining to resolve the issue of whether proof of defendant's knowledge was necessary to sustain a conviction for promoting child pornography in the first degree because there was sufficient evidence that defendant was aware he was making child pornography available to others through a peer-to-peer file-sharing program).

We begin our analysis with a brief description of how the Ares program works. Ares is a peer-to-peer file-sharing program that allows users to share digital files, such as pictures, videos, or documents, with one another. A user begins by downloading the program onto his computer from the Ares website. During the installation process, Ares walks the user through a step-by-step set-up process, which provides information about the file-sharing program and requires the user to agree to certain terms. Once the program is installed, an Ares user wishing to search for available

---

[5] Section 563.035.2 provides, in relevant part: "Promoting child pornography in the second degree is a class C felony unless the person *knowingly* promotes such material to a minor, in which case it is a class B felony." (emphasis added).

files enters a search term in the dialogue box. Then, Ares compiles a list of files fitting the search term that are available for download from other users' computers. When the user clicks on a desired file, it is downloaded from the computers of other users who currently have the Ares program open and have authorized the sharing of such files. Once the download is complete, the file is automatically transferred to a "shared" folder on the user's desktop. By default, Ares makes downloaded files in the "shared" folder available to other users to download. However, a user can manually change the default settings to turn off file sharing altogether and prevent other users from downloading the files.

Here, while Fodrini concedes he downloaded child pornography using Ares, he argues the record is void of any indication that he knowingly provided child pornography to Sergeant Kavanaugh. Fodrini maintains he was unaware of the default file-sharing feature, and, because the default settings require Ares users to share downloads without their permission, he never consciously allowed Sergeant Kavanaugh to access and download child pornography from his "shared" folder. Had he known about the default settings and Ares's intricate file-sharing capabilities, Fodrini contends "he obviously would have changed them to protect himself from criminal prosecution." We find Fodrini's argument unpersuasive.

Missouri cases involving the promotion of child pornography through the use of a peer-to-peer file-sharing program are sparse. However, we find instructive the decisions of the Western District in *State v. Tremaine*, 315 S.W.3d 769 (Mo. App. W.D. 2010), and the Eighth Circuit in *United States v. Durham*, 618 F.3d 921 (8th Cir. 2010). In *Tremaine*, detectives downloaded images of child pornography from an IP address associated with Tremaine's residence. *Tremaine*, 315 S.W.3d at 771. When detectives executed a search warrant, Tremaine admitted downloading child pornography using a peer-to-peer file-sharing program called LimeWire. A forensic

7

examination of Tremaine's computer revealed the existence of the LimeWire program as well as numerous files containing child pornography, all of which were located in a folder labeled "Incomplete." *Id.* Tremaine's computer was set to permit the sharing of files located in his "Incomplete" and "Shared" folders with other LimeWire users.[6] A jury subsequently found Tremaine guilty of promoting child pornography in the first degree by offering to disseminate obscene material. *Id.*

On appeal, the Western District affirmed Tremaine's conviction, concluding that the evidence was sufficient for the jury to find Tremaine knowingly operated his computer in a way that made child pornography available to other LimeWire users. *Id.* at 773. The appellate court found the fact that Tremaine was aware he downloaded child pornography from other LimeWire users supported an inference that he also knew the files he possessed would be available for sharing. *Id.* at 773–74. Additionally, evidence was presented that Tremaine had a working knowledge of LimeWire because he set up the program on his computer, admitted he first found child pornography through the program "a little bit less than a year" ago, and demonstrated he knew how the program worked. *Id.* at 774. Although Tremaine had the option to turn off the file-sharing feature, he actively enabled the sharing of files in his "Incomplete" and "Shared" folders. *Id.* Further, the jury heard evidence of Tremaine's inconsistent statements made prior to and during trial regarding his familiarity with LimeWire, and how the program and child pornography ended up on his computer. *Id.* at 775. The Western District found the jury was entitled to disbelieve Tremaine's efforts at trial to minimize his knowledge of LimeWire and involvement in

---

[6] LimeWire is similar to the Ares program. When a user downloads a file through LimeWire, the file is initially downloaded into an "Incomplete" folder on the requesting user's computer. *Id.* at 773. Once a complete file is assembled, it is automatically transferred to a "Shared" folder. Unlike Ares, however, files in the "Incomplete" and "Shared" folders are not, by default, shared with other users. Rather, LimeWire users must actively enable the sharing of files in order to make them available to download. *Id.* at 773–74.

downloading child pornography, and the jury's rejection of this testimony provided additional evidence to support the verdict. *Id.* at 776.

That same year, in *Durham*, the Eighth Circuit addressed a similar issue as *Tremaine*, but this time in the context of a sentence enhancement for the distribution of child pornography under federal sentencing guidelines. There, police found Durham's IP address offering to participate in the distribution of child pornography through LimeWire. *Durham*, 618 F.3d at 923. Although police did not actually download files from Durham's "shared" folder, they believed the file names were consistent with child pornography. After police executed a search warrant, Durham admitted using LimeWire to download child pornography. *Id.* A forensic examination of Durham's computer revealed his default LimeWire settings had been changed to enable the sharing of files from different folders. *Id.* The examination also revealed the "shared" folder no longer contained child pornography files. Durham subsequently pleaded guilty to the federal offense of knowingly receiving child pornography. *Id.* At the sentencing hearing, the district court applied a two-level distribution enhancement, finding Durham was "very knowledgeable" about LimeWire's downloading capabilities, which led the court to conclude he also was knowledgeable about the program's uploading capabilities. *Id.*[7]

Ultimately, and relevant to the present case, the Eighth Circuit reversed the application of the sentence enhancement, finding there was no evidence in the record that Durham was a sophisticated user of LimeWire. *Id.* at 928–29. The appellate court found there was little evidence demonstrating Durham knew how to operate LimeWire. Durham's brother testified he was more knowledgeable than Durham about computers, and Durham "wasn't real sure how to use"

---

[7] We note that different burdens of proof are required to support a sentence enhancement and a conviction. To support a federal sentence enhancement, the government is only held to a preponderance of the evidence standard, see *id.* at 924, whereas, the State has the burden of proving a defendant's guilt beyond a reasonable doubt, see *Tremaine*, 315 S.W.3d at 771.

9

LimeWire. *Id.* Durham also was not responsible for installing LimeWire on his computer. Rather, Durham's brother installed and set up the program so Durham's daughter could download music. *Id.* at 928. Accordingly, while there was direct evidence that Durham knew how to download files through LimeWire, there was no evidence that he knew he was distributing child pornography. *Id.* at 929. The Eighth Circuit found this evidence contradicted the district court's finding that Durham was "very knowledgeable" about LimeWire's capabilities. *Id.* Additionally, the appellate court concluded Durham's use of a peer-to-peer file-sharing program alone was not a sufficient basis to impose a distribution enhancement. *Id.* at 931.

In applying *Tremaine* and *Durham* to the facts and circumstances of the present case, we find sufficient evidence was presented from which the circuit court could reasonably conclude Fodrini was a sophisticated user of Ares and was knowledgeable about its file-sharing capabilities. As in *Tremaine*, Fodrini admitted installing Ares on his computer, and using the program for four or five months to search for and download files containing child pornography. This admission was supported by the forensic examination of Fodrini's computer, which recovered evidence of complete and incomplete downloads of child pornography from other Ares users. Police also recovered the numerous search terms Fodrini used to search for child pornography within Ares. Moreover, unlike in *Durham*, where the defendant neither had a sophisticated understanding of computers nor personally downloaded LimeWire, here, in addition to downloading and using Ares for several months, police found evidence of various terms Fodrini used to search Google for child pornography as well as bookmarked images depicting child pornography. A forensic examination of the thumb drive seized from Fodrini's residence further revealed 4,200 images of identifiable child pornography as well as approximately twenty-seven videos of child pornography, which supported a reasonable inference of sophistication.

Additionally, Sergeant Kavanaugh testified that "even a novice" can understand that Ares is a file-sharing program, and that its purpose is to download and share files with other Ares users. Specifically, Sergeant Kavanaugh testified that when an Ares user performs a search, the program "will start searching the Ares network of people to see if anybody has those files that you're looking for, and then [the user] would click on those individual files to download what you're trying to obtain." Given Fodrini's working knowledge of Ares, including the fact that he repeatedly used the program to search for and download child pornography, it is reasonable to infer that Fodrini knew the child pornography files he downloaded came from the computers of other Ares users, and, therefore, that his own files would likewise be available for sharing. *See Tremaine*, 315 S.W.3d at 774.

Furthermore, the evidence demonstrates Fodrini had the option to change the file-sharing settings to keep the downloaded files in his "shared" folder private. However, Fodrini chose not to adjust the settings, which made the child pornography readily available to other Ares users. While we acknowledge the Ares program, by default, automatically shares files, Sergeant Kavanaugh testified that Ares clearly walks the user through a step-by-step installation process, which provides information about the program's file-sharing features and requires the user to agree to certain terms. Through this process, the user is informed of the program's default settings, and how to manually change the settings to turn off the file-sharing feature. Here, unlike in *Durham*, it was Fodrini, and no one else, who installed and set up Ares on his computer. There also was no evidence, unlike in *Durham*, that anyone other than Fodrini either used his personal computer or accessed his Ares account. As such, the circuit court could reasonably conclude that Fodrini voluntarily chose not to change the default file-sharing settings and, thus, knowingly allowed other Ares users to access the child pornography in his "shared" folder. *See id.* at 775.

11

In support of his argument that he was not a sophisticated user of Ares, Fodrini points to the statements he made to detectives in which he repeatedly denied knowing Ares was a file-sharing program. However, the circuit court heard all the evidence at trial, including Fodrini's denials, and clearly found his statements not credible. Per our standard of review, we give great deference to the circuit court's determinations of credibility and weight of the evidence. *State v. Donovan*, 539 S.W.3d 57, 66 (Mo. App. E.D. 2017). This Court does not act as a "super juror" with veto powers, nor will we reweigh the evidence anew. *See Nash*, 339 S.W.3d at 509. Moreover, the State presented evidence of the false statements Fodrini made to the detectives regarding his use of Ares and familiarity with downloading child pornography. "When proven false, exculpatory statements evidence a consciousness of guilt." *State v. Farris*, 125 S.W.3d 382, 389 (Mo. App. W.D. 2004). "Guilt may be inferred when an accused attempts to deceive the police, as in making a false exculpatory statement." *State v. Buchli*, 152 S.W.3d 289, 297 (Mo. App. W.D. 2004). Initially, Fodrini denied knowing how Ares worked, and told the detectives he only used Ares to download movies and music, and look at adult pornography. Fodrini denied ever looking at child pornography. However, when Fodrini was presented with evidence of the child pornography search terms found on his computer and the thumb drive, Fodrini admitted lying to the detectives, and confessed to using Ares, as well as other internet websites, to search for and download child pornography. Therefore, like in *Tremaine*, the circuit court could reasonably infer Fodrini's guilt based on his attempt to deceive the detectives, which provides additional evidence supporting his conviction. *See Tremaine*, 315 S.W.3d at 776.

Fodrini also argues that his mere use of a file-sharing program is insufficient to establish guilt for promoting child pornography. Although we recognize Fodrini's argument, the incriminating evidence in this case goes well beyond Fodrini's use of Ares alone. Based on the

12

foregoing evidence, a rational trier of fact could reasonably conclude Fodrini installed and set up the Ares program on his computer, knew he was downloading child pornography files from other Ares users, chose not to change the file-sharing features of the "shared" folder, and was aware that by doing so other Ares users could access and download child pornography from his computer. Accordingly, we find this evidence is sufficient to support Fodrini's conviction for promoting child pornography in the second degree. Point denied.

## Conclusion

We affirm the judgment of the circuit court.

_Angela T. Quigless, J._

Roy L. Richter, P.J., and
Robert M. Clayton III, J., concur.

13