STATE of Missouri, Respondent,

v.

**Kasim FARUQI, Appellant.**

No. SC 91195.

Supreme Court of Missouri,
En Banc.

Aug. 2, 2011.

Rehearing Denied Aug. 30, 2011.

Murry A. Marks, Jonathan D. Marks, The Marks Law Firm LLC, St. Louis, for Faruqi.

James B. Farnsworth, Shaun J. Mackel-prang, Attorney General's Office, Jefferson City, Sheila Whirley, St. Louis County Prosecutor's Office, Clayton, for State.

LAURA DENVIR STITH, Judge.

Kasim Faruqi appeals from a judgment of conviction for attempted enticement of a child. Mr. Faruqi argues that the trial court erred in overruling his motion to dismiss the indictment because the statute setting forth the crime of enticement of a child is unconstitutionally vague.

Mr. Faruqi was charged with and convicted of *attempted* enticement of a child. He did attempt to entice a child, but it turned out that the "child" was a police officer masquerading as a child. Mr. Faruqi says that "affirmative defense" language in subsection 2 of section 566.151 RSMo Supp.2010[1] makes the statute unclear as to whether someone could be convicted of actual enticement of a child in a situation in which no actual child was involved; he argues, therefore, that he should not be able to be convicted of attempted enticement of a child either. But the attempt statute is explicit that "[i]t is no defense to a prosecution under this section that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be." § 564.011 RSMo 2000. Mr. Faruqi's vagueness challenge fails.

For the reasons stated below, this Court also rejects Mr. Faruqi's arguments that his statements to police were involuntary and that certain computer evidence introduced to bolster the other evidence of his computer chats with someone he thought was a 14–year–old girl was obtained through an unlawful search and seizure. The judgment is affirmed.

---

1. Henceforth, all references to section 566.151 are to RSMo Supp.2010.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2006, the Maryland Heights police department conducted an undercover sting operation in which a police officer logged on to an Internet chat room posing as a 14–year–old girl named Kaitlin. On November 6th, "Kaitlin" received an unsolicited instant message from 33–year–old Kasim Faruqi, who was using the screen name "Kasim786." She told him at the beginning of the chat that she was 14. Within 20 minutes, he expressed an interest in meeting her in person. During the first and the three subsequent conversations Mr. Faruqi had with "Kaitlin" online and via telephone, Mr. Faruqi stated that he wanted to hug and kiss "Kaitlin," touch her breasts, perform and receive oral sex, and have unprotected sex with her. He told "Kaitlin" that he knew that this would be illegal because she was only 14, and he made her promise that she would not tell anyone. Ultimately, they agreed to meet at a park.

Mr. Faruqi showed up at the meeting place at the agreed-upon time and was arrested. After Mr. Faruqi's arrest, Detective Steven Osterloh interviewed him. The detective was unarmed and alone with Mr. Faruqi in the interview room. Detective Osterloh began the interview by advising Mr. Faruqi of his *Miranda* rights. He asked Mr. Faruqi whether he could read and write English; Mr. Faruqi responded affirmatively. Mr. Faruqi read the first line of the *Miranda* form aloud and confirmed that he understood it. Then Detective Osterloh read each of Mr. Faruqi's rights to him. After each right was read to him, Mr. Faruqi acknowledged that he understood it and marked it with his initials. When Detective Osterloh finished going through the *Miranda* form, Mr. Faruqi said that he understood his rights and signed a waiver of them.

Detective Osterloh told Mr. Faruqi that the police were investigating complaints by the parents of a 14–year–old girl who were concerned that he was trying to have sex with their daughter. During the interview, when Mr. Faruqi told the detective that he was from Pakistan, the detective asked him about the customs of his home country and his familiarity with the laws of the United States "as far as having sex with a minor."

Mr. Faruqi admitted to Detective Osterloh that he had chatted online with a girl he thought was 14 years old and that he had asked her if she would engage in sexual acts with him. He said that when he went to the park, he believed he would be meeting a 14–year–old girl named Kaitlin. After making his verbal statement, Mr. Faruqi agreed to make a written statement. Mr. Faruqi's first draft of the statement left out some details, so at Detective Osterloh's, request he prepared a more detailed final statement. The statement contained admissions that he had chatted with a 14–year–old girl, that they had talked about sex and that they had arranged to meet.

Mr. Faruqi signed a "consent to search" form permitting a search of the computer at his workplace. Police seized the computer and discovered on it data fragments corresponding with the chats between Mr. Faruqi and "Kaitlin."

Mr. Faruqi was charged by indictment with attempted enticement of a child under section 566.151. Prior to trial, the court overruled Mr. Faruqi's motion to dismiss the indictment, in which he alleged that the enticement statute violated the Due Process Clause because subsection 2 of section 566.151 was unconstitutionally vague. At his bench trial, he admitted that he had participated in the chats but said that he had believed that "Kaitlin" was really an adult, not a 14–year–old girl.

He said that the sexual content of the chats was just a fantasy and that he never had any intention of engaging in sexual conduct with "Kaitlin." He testified that his written statement was coerced by the interviewing officer, who he claimed told him that he could go home if he cooperated and who caused him to become concerned about the worried parents of "Kaitlin," whom he still believed to be a real 14–year–old girl. The trial court found Mr. Faruqi guilty and sentenced him to five years in prison. Because Mr. Faruqi is challenging the constitutional validity of a statute, this Court has exclusive appellate jurisdiction. Mo. Const. art. V, § 3.

## II. STANDARD OF REVIEW AND PRINCIPLES GOVERNING THE CONSTITUTIONALITY OF STATUTES

■ " 'Constitutional challenges to the validity of any alleged right or defense asserted by a party to an action must be raised at the earliest opportunity consistent with good pleading and orderly procedure.' " *State ex rel. Houska v. Dickhaner*, 323 S.W.3d 29, 33 (Mo. banc 2010) (internal quotations omitted). "A statute is presumed to be constitutional and will not be invalidated unless it clearly and undoubtedly violates some constitutional provision and palpably affronts fundamental law embodied in the constitution." *State v. Richard*, 298 S.W.3d 529, 531 (Mo. banc 2009). "This Court will 'resolve all doubt in favor of the act's validity' and may 'make every reasonable intendment to sustain the constitutionality of the statute.' " *Reproductive Health Servs. of Planned Parenthood v. Nixon*, 185 S.W.3d 685, 688 (Mo. banc 2006), *quoting Westin Crown Plaza Hotel v. King*, 664 S.W.2d 2, 5 (Mo. banc 1984).

■ At a motion to suppress hearing, "the state bears both the burden of pro-

ducing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled." *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. banc 1992). The Court defers to the trial court's determination of credibility and factual findings, inquiring only "whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous." *State v. Edwards*, 116 S.W.3d 511, 530 (Mo. banc 2003).

## III. DEFENDANT'S VAGUENESS CHALLENGE HAS NO APPLICATION BECAUSE HE WAS CHARGED WITH ATTEMPTED ENTICEMENT

■ Mr. Faruqi argues that the trial court erred in overruling his motion to dismiss the indictment because the statute setting forth the crime of enticement of a child, section 566.151, is unconstitutionally vague when applied to someone who is charged with enticing a child when the person enticed actually is a police officer masquerading as a child.

■ The Due Process Clause requires that state criminal statutes demonstrate a basic level of clarity and definiteness. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939). "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Similarly, this Court

recently noted in *State v. Pribble*, 285 S.W.3d 310, 314 (Mo. banc 2009), that "[t]he void for vagueness doctrine ensures that laws give fair and adequate notice of proscribed conduct and protects against arbitrary enforcement." Due process does not, however, require perfection. *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language").

"On a challenge that a statute or ordinance is unconstitutionally vague it is not necessary to determine if a situation could be imagined in which the language used might be vague or confusing; the language is to be treated by applying it to the facts at hand." *State v. Young*, 695 S.W.2d 882, 883–84 (Mo. banc 1985). "If a statute can be applied constitutionally to an individual, that person 'will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.'" *State v. Schroeder*, 330 S.W.3d 468, 475 (Mo. banc 2011), *quoting State v. Self*, 155 S.W.3d 756, 760 (Mo. banc 2005).

Mr. Faruqi acknowledges this settled law. He also recognizes that *Pribble* rejected vagueness (and overbreadth) challenges to section 566.151. 285 S.W.3d at 314. But, he asks this Court to entertain a facial challenge to the statute on vagueness grounds here because in *Pribble* it was the term "convicted" in subsection 3 of section 566.151 that was alleged to make the statute impermissibly vague, whereas here he challenges the meaning of subsections 1 and 2 of section 566.151. Those subsections state:

1. A person at least twenty-one years of age or older commits the crime of enticement of a child if that person per-

suades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the Internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

2. It is not an affirmative defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor.

§ 566.151.1 and .2. Mr. Faruqi does not claim that subsection 1 is vague; it clearly states that enticement of a child under the age of 15 years is illegal. He alleges that vagueness is created by the addition of subsection 2, which states that it is not an "affirmative defense" that the victim of the enticement was actually "a peace officer masquerading as a minor."

Mr. Faruqi seizes on this curious language, arguing that the statute is internally inconsistent because, he says, subsection 1 requires that the state prove as an element that the victim is a child younger than 15 years whereas subsection 2 seems to suggest that the age of the victim is an affirmative defense rather than an element of the crime and that the burden of proof is placed on the defendant. As a result, Mr. Faruqi argues, the statute lacks sufficient minimum standards to guide law enforcement officers in its enforcement or to provide citizens with fair warning of prohibited conduct and, therefore, is unconstitutionally vague under the principles set out in *City of Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999).

A plurality in *Morales* held a statute banning "loitering" invalid on vagueness grounds, stating, "When vagueness permeates the text of such a law, it is subject to facial attack," while another plurality in the case held that the statute was so overbroad that it unconstitutionally interfered

with the right of association and, therefore, should be stricken on First Amendment grounds.[2] *Id.* at 55, 119 S.Ct. 1849.

This Court rejects Mr. Faruqi's request that this Court find the statute subject to a facial challenge. Unlike in *Morales*, vagueness cannot be said to permeate the statute in question. Subsection 1 of the statute is unambiguous in its prohibition of sexual enticement of a child under the age of 15 years. This Court already has held subsection 3 not to be vague in *Pribble*, 285 S.W.3d at 314. It is only subsection 2's reference to an affirmative defense that Mr. Faruqi challenges, and only as applied to a person who sexually entices someone that he or she believes to be under the age of 15 years only to find that the person is a police officer masquerading as a child. Mr. Faruqi has not claimed or shown that vagueness permeates the statute and must show that the statute is unconstitutionally vague as applied to him.

Mr. Faruqi's "as applied" challenge is equally unavailing. As just noted, he argues that subsection 2 of section 566.151 makes the statute vague when applied to someone charged with actually enticing a child when the person enticed turns out to be a police officer masquerading as a child, because it says, "It is not an affirmative defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor." § 566.151.2.

▮▮▮▮ The State agrees that the statute is not a model of precision, because it misuses the term *"affirmative defense"*[3] when what it seems to intend to state is that it shall not be *a defense* that the person enticed is a police officer.[4] *See State v. Hall*, 321 S.W.3d 453, 455 (Mo. App.2010) (holding that the statute means that it is not a defense that the person solicited was a police officer masquerading as a child even though the text of the statute uses the phrase "affirmative defense"). The State concedes that other states have avoided this issue by drafting their statutes in a way that specifies that enticement of a child or one whom the defendant believes to be a child constitutes the crime of enticement.[5] Even as writ-

---

2. Similarly, in *Young*, the statute in question made it a crime to be in a place or connected with a place in where cockfighting occurred, without regard to whether one actually were involved in or attending cockfighting or knew that cockfighting occurred. It was so vague that it failed "to provide a person of ordinary intelligence with adequate notice of the proscribed conduct," 695 S.W.2d at 886, and appeared to allow prosecution merely for being in a place at which cockfighting had occurred at some point. That is not the fact situation here.

3. An affirmative defense is an independent bar to liability with respect to which the defendant carries the burden of persuasion that "does not serve to negative any facts of the crime which the State must prove in order to convict" the defendant. *Patterson v. New York*, 432 U.S. 197, 207, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

4. An ordinary defense is one in which the burden of proving guilt remains on the State and the defendant attempts merely to disprove one of the crime's essential elements.

5. For example, a similar statute from Tennessee provides:

 (a) It is an offense for a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or Internet services, directly or through another, to intentionally command, request, hire, persuade, invite or attempt to induce a person whom the person making the solicitation knows, or should know, is less than eighteen (18) years of age, or solicits a law enforcement officer posing as a minor, and whom the person making the solicitation reasonably believes to be less than eighteen (18) years of age, to engage in conduct that, if completed, would constitute a violation by the soliciting adult of [several enumerated sexual] offenses....

ten, however, the State points out that subsection 2 merely states the obvious, that the fact that the "victim" was a police officer is not an affirmative defense. This is not inconsistent with nor does it render ambiguous subsection 1, which clearly makes it a crime to entice a child under the age of 15 years, and, thus, there is no vagueness in regard to its application to a child under the age of 15 years. In support, the State notes other statutes that use the term "affirmative defense" in a context that would seem to make use of the word "defense" more appropriate. No confusion could be caused by the surplusage of insertion of the word "affirmative," it argues.

■ This Court need not resolve this troublesome issue here, for Mr. Faruqi was not charged with enticement of a child under the age of 15 years. Rather, as noted earlier, he was charged with and convicted of the inchoate crime of *attempted* enticement of a child. He admits that he thought the person he was speaking to was a 14–year–old child named Kaitlin, and substantial evidence was presented that he asked "Kaitlin" to meet with him to engage in sexual activity. This is sufficient to constitute an attempt under section 564.011, RSMo 2000, which provides, in pertinent part:

1. A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

§ 564.011.1, RSMo 2000. As such, the attempt statute requires only a showing that "defendant's purpose was to commit the underlying offense and that defendant took a substantial step toward its commission." *State v. Wadsworth,* 203 S.W.3d 825, 832–33 (Mo.App.2006).

■ Mr. Faruqi argues that the fact that "Kaitlin" was really a police officer should preclude application of the attempt statute for the same reasons that it causes vagueness problems in regard to persons charged with completed enticement of a child. But subsection 2 of the attempt statute specifically states that:

2. It is no defense to a prosecution under this section that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be.

§ 564.011.2, RSMo 2000. In other words, it is no defense to a charge of attempted enticement of a child that the underlying offense of enticement of a child was legally or factually impossible because the victim was a police officer masquerading as a child.[6] It does not matter, for purposes of proving attempted enticement, whether the defendant was communicating with an actual child, an undercover officer or any other adult masquerading as a child younger than 15 years. Mr. Faruqi's belief

Tenn.Code Ann. § 39–13–528 (2010 replacement).

**6.** At least since the adoption of section 564.011 in 1979, the State has been permitted to charge criminal attempt even if there is evidence that the defendant committed the completed target offense. Compare § 556.160, RSMo 1959 ("No person shall be convicted of an assault with an intent to commit a crime, or of any other attempt to commit any offense, when it shall appear that the crime intended or the offense attempted was perpetrated by such person at the time of such assault or in pursuance of such attempt"), *repealed and replaced by,* § 564.011, RSMo 2000.

that he was communicating with a person under the age of 15 years for the purpose of sex was sufficient for criminal liability to attach regardless of the victim's true identity. The statute puts a person of ordinary intelligence on notice that, if he or she is at least 21 years old, attempting to entice a person younger than the age of 15 years for the purpose of engaging in sexual conduct—regardless of whether the victim is, in fact, younger than 15 years—is a crime.

## IV. MR. FARUQI'S STATEMENTS WERE NOT INVOLUNTARY

 Mr. Faruqi also argues that the oral and written statements that he made to Detective Osterloh should have been suppressed as involuntary because they were procured by false statements that rose to the level of implied threats.

 The Due Process Clause bars involuntarily obtained confessions from being admissible at trial. *Ashcraft v. Tennessee*, 322 U.S. 143, 155, 64 S.Ct. 921, 88 L.Ed. 1192 (1944) ("The Constitution of the United States stands as a bar against the conviction of any individual in an American court by means of a coerced confession"). "The test for whether a confession is voluntary is whether the totality of the circumstances created a physical or psychological coercion sufficient to deprive the defendant of a free choice to admit, deny, or refuse to answer the examiner's questions." *State v. Simmons*, 944 S.W.2d 165, 173 (Mo. banc 1997). In determining whether a defendant's confession resulted from improper coercion, this Court considers a range of factors relating to the defendant, including his or her "age, experience, intelligence, gender, lack of education, infirmity, and unusual susceptibility to coercion." *Id.* at 175. The Court also considers whether the defendant was advised of his rights, the length of the detention, the repeated and pro-

longed nature of the questioning, and the use of coercive techniques such as deprivation of food or sleep.

In this case, none of the factors listed above suggests that Mr. Faruqi's statements to Detective Osterloh were involuntary. Mr. Faruqi was 33 years old at the time of the interview and is well-educated, having had two years of college. He was advised of his *Miranda* rights before the interview began, indicated that he understood them and signed a written waiver. Although English apparently is not Mr. Faruqi's first language, he indicated no difficulty understanding Detective Osterloh during the interview, and he wrote his statement in English. Equally important, there is nothing in the record indicating that the physical conditions of Mr. Faruqi's interview were coercive. Mr. Faruqi was uncuffed, and the record shows that the interview lasted only approximately two hours. Sufficient evidence existed to support the trial court's conclusion that Mr. Faruqi's statements were not coerced.

Mr. Faruqi contends that two lines of inquiry by Detective Osterloh constituted implicit threats that rendered his confession involuntary. Specifically, as evidence that his confession was coerced, Mr. Faruqi points to Detective Osterloh's false representation that the police had received a complaint from a 14–year–old girl's parents that Mr. Faruqi was trying to have sex with their daughter as well as Detective Osterloh's inquiries about Mr. Faruqi's country of origin and the customs of that country.

This argument fails. First, contrary to the argument Mr. Faruqi now makes, nowhere in the record is there any indication that Detective Osterloh or anyone else threatened that Mr. Faruqi would be sued by the imaginary 14–year–old girl's parents or that he would be deported if he did not confess. It does not appear from the

record that Detective Osterloh even asked Mr. Faruqi about his immigration status; the record shows only that Mr. Faruqi was asked about his country of origin, the customs of that country, and his understanding of the laws of the United States with respect to adults having sex with minors. Moreover, none of the "threats" alleged by Mr. Faruqi to have occurred suggest that he would suffer harm for refusing to confess; the so-called threats about which Mr. Faruqi complains were all directed at the possible consequences of admitting he enticed a child for sexual purposes. There is no basis on the record to conclude that such threats were made.

 Finally, the fact that Detective Osterloh provided Mr. Faruqi with false information regarding the investigation does not *per se* invalidate Mr. Faruqi's confession. Statements obtained by subterfuge on the part of police "are admissible unless the deception offends societal notions of fairness or is likely to produce an untrustworthy confession." *State v. Davis*, 980 S.W.2d 92, 96 (Mo.App.1998) "[T]rickery does not necessarily render statements involuntary, and therefore, inadmissible." *Id.*

Here, Detective Osterloh's false representation that police were responding to complaints made by parents of a 14–year–old girl was not the sort of subterfuge that offends societal notions of fairness. Although Detective Osterloh himself was not undercover, his story about the 14–year–old girl during the interview was simply a part of the sting operation already under-

way. Moreover, nothing about Detective Osterloh's misrepresentation was likely to produce an untrustworthy confession. There is no reason to think that a suspect who had not, in fact, engaged in sexual communications with a person he believed to be a 14–year–old girl would be more likely to confess falsely if he was told that the child's parents were upset about it. Mr. Faruqi's statements were not obtained involuntarily.

## V. MR. FARUQI'S FOURTH AMENDMENT CLAIM IS BARRED AS HE MAINTAINED NO SUBJECTIVE EXPECTATION OF PRIVACY IN HIS·WORK COMPUTER

 Finally, Mr. Faruqi argues that the evidence discovered on his work computer should have been suppressed because it was discovered as a result of an unlawful search and seizure. The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated . . ." U.S. Const. amend. IV. Here, the State argues that Mr. Faruqi lacks "standing" to challenge the constitutional validity of the search. In the context of an alleged Fourth Amendment violation, this is another way of stating that the search and seizure did not infringe upon an *interest* that is protected by the Fourth Amendment.[7] *Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). *Rakas* clarified that to be entitled to assert the violation of the Fourth

---

7. Confusion over how to characterize the ability to challenge searches and seizures has arisen in some cases due at least in part to the prominent use of the word "standing" in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The Supreme Court clarified in *Rakas*, 439 U.S. at 139, 99 S.Ct. 421, that the standing requirement discussed in *Jones* is more properly subsumed under substantive Fourth Amendment doctrine. "[W]e think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Id. Rakas* found that a defendant could not vicariously assert the violation of

Amendment, as incorporated into the Fourteenth Amendment, the defendant must meet two requirements. First, the defendant must have an actual, subjective expectation of privacy in the place or thing searched. Second, the expectation of privacy must be "reasonable" or "legitimate." The legitimacy or reasonableness of the expectation is measured "by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* at 143 n. 12, 99 S.Ct. 421.

In other words, the rights established by the Fourth Amendment are personal in nature and cannot be asserted vicariously. *Rakas,* 439 U.S. at 133–34, 99 S.Ct. 421. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134, 99 S.Ct. 421. To claim the protection of the Fourth Amendment, "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

Here, Mr. Faruqi acknowledges that he consented to the search of the computer. By granting the police permission to search the computer, Mr. Faruqi demonstrated that he maintained no personal expectation of privacy in the content stored on the computer. Because there was no subjective expectation of privacy as to the computer, Mr. Faruqi is barred from raising a claim that the computer was searched in violation of his Fourth Amendment rights. *Rakas,* 439 U.S. at 133–34, 99 S.Ct. 421. Mr. Faruqi says, however, that although he consented to

the search of the computer, he did not consent to its seizure, and could not have done so, as he had no ownership rights or interest in it and no authority to grant the police permission to seize the computer. But, in so arguing he concedes that he had no personal expectation of privacy in the computer. He seeks to assert vicariously the rights of his employer in the computer. This he cannot do. *Id.* This Court, therefore, need not reach whether any expectation of privacy with respect to Mr. Faruqi's work computer would be deemed objectively reasonable. *Cf. City of Ontario v. Quon,* —— U.S. ——, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010).

## VI. CONCLUSION

For the foregoing reasons, the judgment is affirmed.

All concur.

someone else's Fourth Amendment rights by a challenged search and seizure. *Id.*