**STATE of Missouri, Respondent,**

v.

**Daniel P. ALMAGUER, Appellant.**

No. ED 95501.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 16, 2011.

John K. Tucci, St. Louis, MO, for appellant.

Chris Koster, John M. Reeves, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

*Introduction*

Daniel Almaguer ("Almaguer") appeals from a sentence and judgment of conviction for three counts of enticement of a child and one count of patronizing prostitution. He asserts that there was insuffi-

cient evidence to support his conviction. We affirm.

*Background*

Almaguer was charged with three counts of enticement of a child (Counts I–III) and one count of patronizing prostitution (Count IV). The evidence at the bench trial showed the following.

On February 7, 2008, Officer James Stewart ("Officer Stewart") of the Troy Police Department entered a Missouri "chat room," posing as a fourteen year-old girl using the screen name "AmieEliz14" and listing her name as "Amie White." Almaguer contacted "Amie" and invited her to a private instant-message conversation. Almaguer stated that he was thirty-five; "Amie" replied that she was fourteen.

From this date until April 10, 2008, Almaguer chatted with "Amie" twenty-two times. A number of these chats became sexual with Almaguer stating that they could "fondle" and "kiss and play," as well as describing many more graphic sexual scenarios to "Amie." On several occasions, Almaguer invited "Amie" to view his "webcam" where he proceeded to expose his penis and masturbate, and tell "Amie" things like "Kiss it, suck it." Further, during a later chat, Almaguer offered to pay "Amie" ten dollars per hour to perform oral sex on him. On several occasions during their internet chat, he admitted to "Amie" that if they did more than kiss he could get in trouble, and told her that they could get in trouble if anyone found out.

Beginning in February 2008, Almaguer indicated his intent to drive from Springfield to Troy to visit "Amie" while her mother was out of town. He stated that he would visit "Amie" on March 6 and that they would meet at Troy City Park. Almaguer expressed his desire to have sexual intercourse with "Amie" in the back of a Mustang, a car which he said he would

rent because "Amie" claimed it was her favorite car. "Amie" asked if she could drive the Mustang, but Almaguer said that she would have to pay for it by performing sexual acts with him.

The day before Almaguer planned to come visit "Amie," he told her that he had a Mustang, and he planned to leave Springfield the next day. However, on March 6, Almaguer informed "Amie" that he would not be able to come see her because of snow in Springfield; he stated that he could not drive if he could not move his car due to snow.

Almaguer and "Amie" chatted several more times after March 6, during which he told "Amie" that he still wanted to come see her, but he would not be able to come until the summer. Almaguer never went to Troy to meet "Amie."

In addition, Lincoln County Sheriff's Deputy Craig Lazzaro testified that during a recess on the first day of trial, Almaguer spontaneously pointed to the screen that was being used to display evidence and said, "I may be a pervert, and I might have done that, but I never touched her."

Almaguer presented two witnesses at trial. Dr. James Herriot ("Dr. Herriot"), a "professor of human sexuality or clinical sexuality," testified that sometimes people go on the internet in order to engage in "play-acting," which can be sexually explicit. Dr. Herriot opined that people typically do not use chat rooms to meet and have sex. However, Dr. Herriot had never actually spoken with Almaguer about his interactions with "Amie" and could not speak to what his mindset was when the interactions took place.

Anthony Lupo also testified to the following on behalf of Almaguer as an expert in weather and weather history. On March 4, it had snowed approximately seven inches in Springfield, but by March 5

the weather was clear. Based on melting patterns, there would have been no snow in Springfield or along Route 44 on March 6. Almaguer did not testify at trial.

The trial court convicted Almaguer of all three counts of enticement of a child and one count of patronizing prostitution. Almaguer filed a motion for judgment of acquittal, claiming, inter alia, that there was insufficient evidence to support a finding of guilt. The trial court denied the motion. The trial court sentenced Almaguer to three concurrent terms of imprisonment for seven years in the Missouri Department of Corrections for Counts I–III, and six months concurrent in the county jail on Count IV. This appeal follows.

### Standard of Review

The standard of review for a challenge to the sufficiency of the evidence is the same in both court-tried and jury-tried cases. *State v. McGinnis*, 317 S.W.3d 685, 686 (Mo.App. W.D.2010). We review challenges to the sufficiency of the evidence supporting a criminal conviction for whether sufficient evidence existed from which a reasonable finder of fact could have found the defendant guilty of all the essential elements of the crime. *State v. Gibbs*, 306 S.W.3d 178, 181 (Mo.App. E.D.2010). We accept as true all evidence favorable to the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and inferences. *Id.*

### Discussion

■ In his sole point on appeal, Almaguer argues that the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence because the evidence was insufficient to support his conviction, in that the State did not prove Almaguer took any actions constituting a substantial step toward the commission of the crime. We disagree.

■ Section 566.151.1, RSMo. (2006) provides that a person who is at least twenty-one years of age "commits the crime of child enticement if that person persuades, solicits, coaxes, entices, or lures" through the internet "any person who is less than fifteen years of age for the purpose of engaging in sexual conduct." Section 566.151.2 provides that it is not an affirmative defense that "the other person was a peace officer masquerading as a minor."[1]

Almaguer does not contest that he was at least twenty-one years of age, that he believed he was contacting a fourteen year-old girl, "Amie," via the internet, that

---

1. Our review of Missouri case law shows that in cases where the defendant is communicating with a law enforcement officer, the defendant is normally charged with attempted enticement of a child. *See, e.g. State v. Faruqi*, 344 S.W.3d 193 (Mo. banc 2011); *State v. Fleis*, 319 S.W.3d 504 (Mo.App. E.D.2010); *State v. Wadsworth*, 203 S.W.3d 825 (Mo.App. S.D.2006). We, however, see no error in the State charging Almaguer with enticement of a child rather than attempted enticement. Although "Amie" was in fact a law enforcement officer, the statute specifically provides that this is not an affirmative defense. Section 566.151.2, RSMo. (2006). It therefore does not appear necessary, under the statute, to charge Almaguer with attempt. Further, Section 566.151.3 sets forth identical ranges of punishment for enticement of a child and attempted enticement of a child, thus any error in charging is harmless. *See State v. Davies*, 330 S.W.3d 775, 786–87 (Mo.App. W.D.2010) (reviewing court may enter conviction for lesser offense provided that evidence was sufficient to support each element). We note that the Missouri Supreme Court's recent decision in *Faruqi*, while it recognizes the confusion caused by Section 566.151's "misuse[ ]" of the terms "affirmative defense" and "defense," does not reach a conclusion regarding the proper approach to this statute as *Faruqi* was charged with attempted enticement of a child.

the fact that "Amie" was actually Officer Stewart is no defense to the crime, that he engaged in sexually explicit web chats with "Amie," or that he expressed a desire to drive to Troy to engage in sexual conduct with "Amie." Section 566.151; *State v. Davies*, 330 S.W.3d 775, 784 (Mo.App. W.D. 2010). His argument on appeal is that because he voluntarily decided not to appear for the meeting with "Amie," the State failed to provide sufficient evidence that he intended to engage in sexual conduct with her.

■ Almaguer's argument, however, fails. An arranged meeting is not required to prove the commission of the crime of child enticement. *See State v. Fleis*, 319 S.W.3d 504, 508–09 (Mo.App. E.D.2010) (discussing sufficiency of evidence in context of attempted enticement). A defendant can be found guilty based upon statements made during chats on the internet. *Id.* at 509. For Almaguer to be guilty of the crime of enticement of a child, he needed only to persuade, solicit, coax, entice or lure "Amie" for the purpose of engaging in sexual conduct. *See id.* ("the sexual communications, along with Fleis's communications about the two meeting[s], provide sufficient evidence from which a jury could find beyond a reasonable doubt that Fleis's purpose in communicating with "Kayla" was to entice her"); *State v. Wadsworth*, 203 S.W.3d 825, 833–34 (Mo. App. S.D.2006) (court found that communications describing sexual situations and suggesting meetings, were substantial step towards commission of enticing child under age of 15 to meet for purpose of engaging in sexual conduct).

■ As we understand Almaguer's arguments, he points to the testimony of Dr. Herriot to assert that the internet chats with "Amie" were merely "a form of role play" and did not express an actual intent to meet. Dr. Herriot's testimony, however, does not establish that Almaguer had

no intent to meet "Amie" for the purpose of engaging in sexual conduct. Dr. Herriot had never actually spoken with Almaguer regarding these chats and could not testify to Almaguer's mindset while he was communicating with "Amie." Rather, the trial court was free to believe the chats between Almaguer and "Amie" demonstrated a desire to meet and were more than "a form of role play." *Gibbs*, 306 S.W.3d at 181 (on appeal, we must give great deference to fact finder's credibility determinations and view evidence in light most favorable to verdict). The State established that Almaguer solicited and coaxed "Amie" to meet at Troy City Park for the purpose of engaging in sexual conduct and thus, presented sufficient evidence to establish each essential element of the crime under Section 566.151.

■ Likewise, Almaguer argues the evidence that the roads were clear on March 6 demonstrated that he never planned to actually meet "Amie." He cancelled the meeting with "Amie" saying the roads were snowy, but on appeal he suggests that he cancelled their meeting of his own accord, merely using the claim of snowy roads—which were in fact clear—as an excuse. Evidence of clear roads alone, however, was insufficient to establish that Almaguer had no intent to engage in sexual conduct with "Amie." Again, the evidence was sufficient to support each element of the crime, and the trial court was not obligated to accept Almaguer's alternate explanation. *Gibbs*, 306 S.W.3d at 181.

■ Almaguer next contends that the evidence was insufficient to support his conviction for patronizing prostitution. Section 567.030.1, RSMo. (2004) provides that a person "commits the crime of patronizing prostitution if he patronizes prostitution." Patronizing prostitution is defined as, inter alia, "solicit[ing] or re-

quest[ing] another person to engage in sexual conduct ... in return for something of value." Section 567.010(3)(c), RSMo. (2000).

Here, the evidence established that Almaguer solicited "Amie" to engage in sexual conduct with him in return for something of value when he offered to pay "Amie" ten dollars an hour to perform oral sex on him. These facts were sufficient to establish the elements of patronizing prostitution under Section 567.030. *See State v. Ellis,* 853 S.W.2d 440, 444 (Mo.App. E.D.1993) (defendant's statement offering five dollars to perform oral sex on undercover police officer was sufficient to sustain his conviction for patronizing prostitution).

Looking at the record, the State's evidence was sufficient to support convictions for all three counts of enticement of a child and one count of patronizing prostitution, and the trial court did not err in overruling Almaguer's motion for judgment of acquittal and imposing judgment. *Gibbs,* 306 S.W.3d at 181.

### Conclusion

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, P.J., and ROY L. RICHTER, J., Concur.