

# In the Missouri Court of Appeals
## Eastern District

DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100671 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| JAMES CHANEY, | ) | Honorable Steven R. Ohmer |
| | ) | |
| Defendant/Appellant. | ) | Filed: December 23, 2014 |

### Introduction

James Chaney (Appellant) appeals from the trial court's judgment entered after a bench trial convicting him of stealing over $500 as a prior and persistent offender. We reverse and remand.

### Factual and Procedural Background

The evidence adduced at trial, viewed in the light most favorable to the verdict, is as follows.

On the morning of November 28, 2012, John O'Daniel (O'Daniel) was driving in the area of 900 Angelica Street, when he saw two men removing a fence from the road. One man was loading a roll of fence into the back of a truck while the other man was cutting fence from the post. O'Daniel recognized the truck, a black Dodge with a white emblem on the back window, from the neighborhood. O'Daniel called 911 and gave the operator descriptions of the men and the truck, including the truck's license plate number.

Police Officers Lisa Toedte and Scott Rose responded to the area. The officers canvassed the local scrapyards, locating the truck at a scrapyard shortly thereafter. Officer Rose spoke with the two subjects, one of whom was Appellant, while Officer Toedte went inside the scrapyard. Immediately upon entering the yard, Officer Toedte saw a roll of fencing. Officer Toedte spoke with the manager of the scrapyard, who provided her with a property receipt with Appellant's signature at the bottom for a roll of fencing he had just scrapped. Officer Rose arrested Appellant. After being placed under arrest, Appellant stated "that the fence was partially down and he just took the rest of it." Officer Toedte testified she seized $16 from Appellant, which was the amount on the property receipt.

Victor Tincknell, a construction manager for MoDOT, testified he oversees the replacement of damaged fencing, guardrails, and guard cable in the St. Louis area. Tincknell writes up work orders for these types of repairs and is familiar with the cost of performing these jobs. Tincknell testified MoDOT sets the price of materials on contracts.

Tincknell measured the area of missing fence at 900 Angelica Street and completed the work order to replace the fencing. Tincknell stated two posts were bent and the horizontal brace, the truss rod, and 70 feet of fence fabric and tension wire were missing. Tincknell testified the replacement cost of fence fabric is $6 per linear foot, or $420 for 70 feet, and $3 per foot for tension wire, or $210 for 70 feet, culminating in $630 in materials to replace the fence. Tincknell stated, based on his knowledge and experience, it would not be possible to get materials for 70 feet of fencing for less than $500. Tincknell testified there was nothing wrong with the fence before it was stolen and

2

there was nothing substantially different between the original fence and the fence needed to be installed to replace it.

During direct examination by the State, Tincknell testified to the condition and value of the fence after removal as follows:

> Q. Mr. Tincknell, based on what you [saw] at the scene when you arrived there, how was this fencing removed?
> A. The fence was -- the fence was cut at each end of the pole post at the tension bar. The pole -- there is a bar that they slide down through the fence to pull the tension on. It was cut at each end of that and bolted to the two end posts.
> Q. Okay. And a fence that's removed in that kind of a way, is that fence useful to you anymore?
> A. No. I mean, it could be if I -- I don't know what the fence -- I didn't see the fence. The fence was never picked up or returned to me for my contractor to get, and I allowed a few days for that to happen and it didn't happen. And we had to get the fence back up in a reasonable amount of time and I -- we didn't. We gave it a reasonable amount of time for the fence to be returned to us and it wasn't. I can't tell you what the fence looked like because I didn't see it. It wasn't there.
> Q. Was the way that it was taken off of the wire –
> A. I'm sorry?
> Q. The way that it was taken off of the post, was that done in a way that would leave it undamaged?
> A. No. It was damaged on each end.
> Q. And when a fence is damaged in that kind of a way, can you ascertain its value?
> A. No, I can't.

Tincknell testified MoDOT's maintenance division received a phone call to pick up the fence but they did not do so.  When shown a photo of the roll of fencing recovered from the scrapyard by Officer Toedte, Tincknell stated he recognized the fencing as State highway fencing from the tension wire on top because it is not commonly used. Tincknell testified that while the fence might function without the tension wire, it would not meet MoDOT's standards without it.  Tincknell also stated that chain link fence used

by the State is different from commercial or residential fencing, as it is a heavier gauge and is five feet high.

The State charged Appellant, as a prior and persistent offender, with stealing over $500. The court found Appellant was a prior and persistent offender and, at the close of the evidence, found Appellant guilty as charged. The court sentenced Appellant to 15 years' imprisonment, suspended execution of sentence, and placed Appellant on probation for two years and ordered him to pay $949.77 in restitution to MoDOT. This appeal follows.

Discussion

Point I – Sufficiency of the Evidence

In his first point on appeal, Appellant argues the trial court erred in overruling his motion for judgment of acquittal and sentencing him for stealing over $500 because there was insufficient evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that the stolen property had a value over $500.

The standard of review for a challenge to the sufficiency of the evidence is the same in both court-tried and jury-tried cases. State v. Almaguer, 347 S.W.3d 636, 639 (Mo. App. E.D. 2011). On review of a challenge to the sufficiency of the evidence supporting a criminal conviction, this Court determines whether there was sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. Id. In determining whether sufficient evidence supports the verdict, this Court considers the evidence, and the reasonable inferences drawn therefrom, in the light most favorable to the verdict, disregarding all contrary evidence and inferences. Id.

4

"A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Section 570.030.1.[1]  Generally, stealing is a Class A misdemeanor; however, it is a Class C felony if the value of the property or services appropriated is between $500 and $2,500.  Sections 570.030.3(1) and 570.030.8. "Value" is defined as "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime." Section 570.020; State v. Foster, 762 S.W.2d 51, 52 (Mo. App. E.D. 1988).

Appellant asserts the State failed to meet its burden of proof because it did not show that the market value of the fence was over $500 at the time of the crime or that the market value of the fence could not be ascertained.  Appellant contends the State relied solely on the cost of replacement, which could not be considered without first showing that the market value of the fence was not ascertainable.  We agree.

Here, the State only presented evidence as to the replacement cost of the fence, that being $420 for the fence fabric and $210 for the tension wire, a total cost of $630. The plain language of Section 570.020, however, directs that the replacement cost may only be used if the market value of the property at the time and place of the crime cannot be satisfactorily ascertained.  Section 570.020; see also Foster, 762 S.W.2d at 54 (evidence of cost of replacement was improper when the State does not present evidence that the market value of items at the time of the taking was unascertainable).

The State asserts it met its burden based on Tincknell's testimony that he would not be able to ascertain the value of a fence that had been damaged in the same manner as

---

[1] All statutory references are to RSMo 2012, unless otherwise indicated.

the fence that was stolen by Appellant. The State's argument misinterprets and misapplies Sections 570.020 and 570.030. On its face, Tincknell's testimony only supports a finding that the market value of the fence *after* the crime, when it had been damaged during removal, was unascertainable. It does not support a finding that the market value of the fence was unascertainable, *at the time and place of the crime*, when the fence was still intact.

Tincknell testified there was nothing wrong with the fence before it was stolen and the record provides no insight into what the market value was of the fence at that time or why such a figure was unascertainable. To meet its burden, the State should have inquired of the witness as to the value of the fence before it was removed and damaged or explained why such value was unascertainable − for example, if there was no market for the property. Contrary to the State's assertions, the State failed to present any evidence supporting a finding that the market value of the fence at the time and place of the crime was unascertainable.

Assessing the market value of the property at the time and place of the crime is essential to determining the extent of the theft and whether the defendant is subject to an enhancement under Section 570.030. Assessing the value of the property after the crime creates the risk of undervaluing the property. As this case illustrates, the evidence demonstrated the fence was operating correctly and was without major defects at the time of the taking but that it was damaged and potentially unusable after the taking, presumably significantly decreasing the property's value. Tying the valuation of the property to the time and place of the taking ensures that the full value of the property is

considered during prosecution and sentencing, while assessing the value of an object after the crime, when the property may be damaged or its value compromised, fails to do so.

The State failed to present any evidence as to the market value of the fence at the time and place of the crime or that such figure was unascertainable; thus, the State could not rely on the replacement cost of the fence in meeting its burden of proving that Appellant stole property with a value over $500. Because the State failed to prove a value over $500 or more at the time of the offense for the fence, we amend the Appellant's conviction to the lesser-included offense of Class A misdemeanor stealing in accordance with Sections 570.020.3 and 570.020.8. Appellant's Point I is granted.

<u>Point II – Prior and Persistent Offender</u>

In his second point on appeal, Appellant maintains the trial court erred in finding that he was a prior and persistent offender and sentencing him to an enhanced prison term because the State failed to meet its burden of proof on this issue. Because Section 558.016.7[2] does not provide for an enhanced punishment as a prior and persistent offender on a misdemeanor conviction, Appellant's Point II is moot and denied as such.

<u>Conclusion</u>

The judgment of the trial court is reversed and remanded for resentencing consistent with this opinion.

---

[2] Under Section 558.016.7, persistent offenders are subject to enhancement of punishment by extending the maximum sentence for convictions on Class B, C, and D felonies to the maximum for the next higher level felony. Specifically, Section 558.016.7 provides as follows:
The total authorized maximum terms of imprisonment for a persistent offender or a dangerous offender are:
(1) For a class A felony, any sentence authorized for a class A felony;
(2) For a class B felony, any sentence authorized for a class A felony;
(3) For a class C felony, any sentence authorized for a class B felony;
(4) For a class D felony, any sentence authorized for a class C felony.

_____
Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and
Philip M. Hess, J., concur.