STATE of Missouri,
Plaintiff/Respondent,

v.

Emmitt R. ARNEL,
Defendant/Appellant.

Emmitt R. ARNEL, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 60235, 61858.

Missouri Court of Appeals,
Eastern District, Division One.

Feb. 2, 1993.

John A. Klosterman, St. Louis, for appellant.

William L. Webster, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant appeals his conviction by a jury of second degree murder, § 565.021, RSMo 1986, and armed criminal action, § 571.015, RSMo 1986. He was sentenced by the court, in accordance with the jury's recommendation, to life imprisonment on the murder charge and a term of 30 years' imprisonment on the armed criminal action charge. The court ordered the terms to run consecutively. After sentencing, defendant filed a Rule 29.15 motion which the motion court denied without an evidentiary hearing. These appeals have been consoli-

dated for review pursuant to Rule 29.15(1). We affirm the judgments.[1]

The evidence reveals that defendant and victim were lovers and had shared a house for two or three years preceding the incident. The relationship between defendant and victim was tumultuous; victim would sometimes leave defendant and remain away from the home because she was "fearful" of defendant's temper. Defendant had a long history of alcohol abuse and was reported to have beaten victim and a previous girlfriend on prior occasions.

On September 30, 1988, defendant's daughter, Brenda, her son, Michael, and her boyfriend, Bernard, visited defendant and victim in their home. Between 11:00 and 11:30 p.m., Brenda and Bernard retired to one of the bedrooms; Michael slept on a couch in the living room. About an hour later, the three awakened to hear an argument between defendant and victim emanating from their bedroom, concerning defendant's fears that victim had been unfaithful. Brenda heard her father using vulgar language toward victim. After the argument had continued for quite a while, Brenda and Bernard observed defendant leave the bedroom; Michael saw him go to a closet, take a shotgun shell out of a box, drop the shell, and pick it back up. Defendant returned to the bedroom. Approximately 15 seconds later, there was a loud "pop"; defendant then came out of the bedroom, yelling, "Brenda, come and help me, get help, call the police, call the ambulance."

Brenda telephoned for emergency assistance then entered the bedroom, where she saw the victim lying on the bed in a pool of blood. Defendant's shotgun was nearby, leaning against an end table. The police arrived and arrested defendant. Defendant told the first officer on the scene, "I didn't mean to kill her, she didn't deserve to die." The officer entered the home and found victim dead. He examined the shot-gun and removed one spent shell. The medical examiner subsequently examined the body and determined that the cause of death was a shotgun blast inflicted at relatively close range, destroying the heart.

Defendant was taken to the police station where he was read his *Miranda* warnings and interviewed. Defendant stated that he had retrieved the shotgun just to scare victim and that the gun should have been unloaded, since he had previously removed the shells at victim's request. He admitted that he had pointed it at victim while she was lying in bed, but did not remember pulling the trigger. Defendant maintained that someone else must have reloaded the gun. He admitted that he had been drinking, but stated that he was not drunk.

Defendant was indicted on charges of first degree murder and armed criminal action. A jury trial was held; defendant presented a defense of lack of responsibility for his conduct due to mental disease or defect. Defendant did not testify, but instead offered the testimony of a clinical psychologist who stated that, in his opinion, defendant was not responsible for his actions. The State presented rebuttal testimony from its expert, a forensic examiner and psychologist, who stated that, in his opinion, defendant was responsible for his actions.

The case was sent to the jury, which received instructions on first degree murder, second degree murder, involuntary manslaughter, and armed criminal action.[2] Following deliberation, the jury returned its verdict, finding defendant guilty of second degree murder and armed criminal action.

In his sole point on appeal, defendant claims that "[t]he trial court plainly erred by refusing to instruct the jury in accordance with [defendant]'s requested jury instruction on voluntary manslaughter ... in that ... there was affirmative evidence

---

1. Defendant has not briefed the allegations of error contained in his Rule 29.15 motion. We thus consider them to have been abandoned. Rule 84.13(a); *State v. Gaines,* 807 S.W.2d 678 (Mo.App.1991).

2. Defendant requested an instruction on voluntary manslaughter, but did not tender such a proposed instruction to the court at the instruction conference.

that [defendant] acted in sudden passion caused by adequate provocation." In his brief, defendant advances the following argument to support this contention:

> [T]he [S]tate's own witness testified that they [sic] heard the single gunshot immediately following a lengthy, heated argument between [defendant] and the victim. Additionally, the victim and [defendant] had engaged in arguments in the past, and the victim had recently moved back into the [defendant]'s home. These facts present, at the very least, a question of fact, reserved to the jury, whether [defendant] acted out of sudden passion based upon adequate provocation.

We find no error, plain or otherwise, in the trial court's refusal to instruct the jury on voluntary manslaughter.

"If there is some evidence that defendant caused the death under the influence of sudden passion arising from adequate cause it is reversible error to fail to give a [voluntary] manslaughter instruction." *State v. Williams*, 787 S.W.2d 308, 313 (Mo.App.1990) (citing *State v. Newlon*, 721 S.W.2d 89 (Mo.App.1986)).

A person commits the crime of voluntary manslaughter if he "[c]auses the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of section 565.-021, except that he caused the death under the influence of sudden passion arising from adequate cause." § 565.023.1(1), RSMo 1986. "Sudden passion" means "passion directly caused by and arising out of provocation by the victim ... which passion arises at the time of the offense and is not solely the result of former provocation"; "adequate cause" means "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." § 565.002(7), (1), RSMo 1986.

This court, in *State v. Simmons*, 751 S.W.2d 85, 91 (Mo.App.1988), discussed the meaning of these terms in the context of an appeal following a first degree assault conviction. In *State v. Fears*, 803 S.W.2d 605, 609 (Mo. banc 1991), our supreme court

recently applied our reasoning in its resolution of an appeal of a voluntary manslaughter conviction, and quoted with approval the following excerpt from Judge Dowd's opinion in *Simmons:*

> To be "adequate," the provocation must be of a nature calculated to inflame the passions of the ordinary, reasonable, temperate person.... [T]here must be a sudden, unexpected encounter or provocation tending to excite the passion beyond control. Passion may be rage or anger, or terror, but it must be so extreme that for the moment, the action is being directed by passion, not reason. R. Perkins, *Criminal Law*, 66 (1969). In addition, the offense must have been done in a sudden passion and not after there has been time for the passion to cool. Furthermore, while words, gestures or other actions may give rise to provocation it was the rule at common law and the general long-standing rule in Missouri that words, no matter how opprobrious or insulting are not sufficient to show "adequate provocation."

A manslaughter instruction is typically justified when the victim perpetrates a battery upon the defendant. *State v. Franks*, 793 S.W.2d 543, 546 (Mo.App.1990).

In the case at bar, there was no evidence presented which supports a finding that defendant's actions in killing the victim were caused by victim's adequate provocation. No evidence shows the victim's state of mind or that she advanced toward defendant in a threatening manner. *See id.* On the contrary, the evidence reveals that defendant argued with victim, left the bedroom and went to a closet, where he retrieved a shotgun shell, dropped it, and picked it up again. He returned to the bedroom, where he pointed the gun at victim in order to "scare" her. He then shot victim at relatively close range, causing her death. Defendant's actions are consonant with the elements necessary for conviction of second degree murder, and do not support submission of a voluntary manslaughter instruction. The trial court properly

refused defendant's request for a voluntary manslaughter instruction.

Judgment affirmed.

AHRENS, P.J., and CRIST, J., concur.