**STATE of Missouri, Respondent,**

v.

**Joseph V. WILLIAMS, Appellant.**

**No. SD 31794.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 13, 2012.

Amy M. Bartholow, Columbia, MO, for Appellant.

Chris Koster, Attorney General and Jennifer A. Wideman, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

Joseph V. Williams ("Williams") appeals his conviction by a jury for the class B felony of violence against an employee of the Department of Corrections, a violation of section 217.385.[1]  Following his conviction, he was sentenced by the trial court to 15 years' imprisonment with that sentence to run consecutive to the other sentences he was already serving.  In his sole point relied on, Williams argues the trial court erred in refusing to submit his proposed duress instruction to the jury.  We affirm the judgment and sentence of the trial court.

**Factual and Procedural Background**

Williams does not challenge the sufficiency of the evidence to support his conviction.  The record reveals that James Presson ("Presson"), a "Storekeeper II" employed at the Southeast Correctional Center in Charleston, Missouri, came into contact with Williams at around 7:00 a.m.

---

1.  All statutory references are to RSMo 2000,     unless otherwise stated.

on the morning of June 23, 2009, while Williams, who was serving a sentence of 734 years, was on his way to breakfast. After Presson asked Williams two separate times to pull up his sagging pants, Presson "touched [Williams] on the arm" with a manila envelope and some forms he was carrying. Presson explained that he did that "[t]o get [Williams'] attention, because [he] had spoke to him twice and he didn't respond, and [the facility does] have hearing-impaired offenders, so in case he was hearing impaired, it was to try to get his attention." When Williams still failed to respond to Presson, Presson "called [Williams] back and asked for his ID card, which [Williams] told [Presson] he didn't have." Presson then asked Williams "his name and number and was about to write it on one of the forms [he was carrying] so that [he] could contact [Williams'] caseworker to get him an ID card. . . ." Around that same time, a corrections officer, Officer Fortner, approached the two as they were standing outside the cafeteria and Presson told Officer Fortner what was transpiring. Just as Presson began to write down Williams' name, Williams hit him in the face.[2] As a result of the assault, Presson suffered a scrape on the right side of his face, a scrape on the left side of his face, two busted lips, a broken tooth, and injuries to both shoulders. Presson testified at trial that he had no prior negative encounters with Williams; he never called Williams any derogatory names; he addressed Williams as "sir" during their encounter; and he did not say anything to Williams after the assault.

Williams testified at trial that the volatile atmosphere found in prison contributed to his assault upon Presson. He stated that in prison "you have . . . different politics always going on, on a day-to-day basis, so everybody's watching everything all the time" such that "it can be imperative to your health if you're not aware of your surroundings." He related that prisoners considered "weak" open themselves up to being victims of, among other things, assault, rape, and extortion and that he had personally witnessed such acts being carried out. He related that complying with the orders of a prison guard do not make an inmate weak because of their authoritative position, but that other prison employees, such as Presson, did not have the same air of authority. He related that he had walked past several guards on his way to breakfast without any of them commenting on his clothing and he had never seen a non-guard prison employee engage with a prisoner over a supposed dress violation. Williams asserted that when Presson had him come back out of the cafeteria to get his name and ID number, Presson cursed at him and told him he did not want to see his "black ass." Williams felt that allowing himself to be seen being "harass[ed]" by Presson would mark him as weak in the prison society hierarchy. He stated there were perhaps sixty other prisoners watching the incident from the cafeteria window. He went on to testify that while he was talking to Presson, another inmate "made eyes" at him and with his "body language, eye contact, things of that nature . . ." that prisoner "was egging [him] on. . . ." Williams then admitted he was aware that Presson was a prison employee, that he was an inmate, and that he knowingly "struck [Presson] with [his] fists[.]" With that being admitted, he then went on to note that Presson had "worked within corrections long enough to understand that what he did was inviting a situation which he was man enough to invite, so . . . he understood what he was getting himself into when he spoke to [Williams] and treated [him] in the manner

2. A video of the assault was played for the jury at trial.

that he did." Williams then stated on redirect the following:

Personally, I'm never getting out of prison. I'm going to die in prison. I've come to that realization years ago. So it would be better to be found guilty so I can file an appeal, possibly take another road trip up here, enjoy, you know, all the amenities afforded to me by this county jail, you know, and break the humdrum of everyday prison life.

At the close of all the evidence, a jury instruction conference was held outside the presence of the jury. The defense submitted the following duress instruction:

### INSTRUction No. _____

If you find and believe from the evidence beyond a reasonable doubt that [Williams] engaged in the conduct submitted in Instruction No. ____, you will then decide whether or not at that time he acted under duress.

If you further find and believe that it is more probably true than not true,

First, that the prison population threatened the imminent use of physical force against [Williams], and

Second, that this threatened use of force was such that a person of reasonable firmness in [Williams'] situation would not have been able to resist, and

Third, that [Williams] was thereby coerced into engaging in the conduct submitted in Instruction No. _____,

then you must find [Williams] not guilty under Count _____ by reason of acting under duress.

The following colloquy then occurred:

[COUNSEL FOR WILLIAMS]: Yes, Your Honor. As you know, the defense has the burden of injecting the issue that the defendant was under duress. I think his testimony was more than sufficient to do that. He testified that he knew exactly what that look from that other inmate meant, and that that look meant that I can't believe you're letting this guy harass you, wait till I get a hold of you. He testified that he believed that if he did not retaliate, he would be sexually or physically assaulted in the near future. Certainly he has—he has done everything he needed to do to establish that he acted under duress. He testified as to the prison environment. He testified as to what happens when you look weak. He testified that [Presson], you know, stepped out of his boundaries, that this isn't something that people who aren't guards do. I think he's made it more than clear as to why he did what he did, and I think the duress instruction is warranted accordingly.

THE COURT: [The State]?

[THE STATE]: Your Honor, of course the State does not find the instruction consistent with the evidence presented. Maybe the Court has an extra copy of that duress instruction that they wish to offer. Thank you.

First of all, the first element that they are trying to instruct on is that the prison population threatened the imminent use of physical force against ... Williams, and there's no testimony to the prison population rising up and threatening him with physical force. As a matter of fact, in defense counsel—as far as what the guy that walked by and looked at him, as far as what he was thinking, what his body language meant, what his thought processes were, the motion in limine that this counsel offered states that a witness may not testify to the thought processes of another person. And that's true.... So his testimony as to the thought processes of

924

the guy who walked by him should not be a basis for this.

Furthermore, the use—there was no threatened use of force. Nobody made the threat, and nobody coerced him into engaging and to the conduct that he engaged in. I think that the evidence at best was a general impression that this defendant had that he was being watched and that he had to act strong, but nobody told him that, if you don't do this, there's going to be adverse consequences for you, there's going to be— you'll find yourself in imminent—or in physical difficulties, or force will be used against you. That just didn't happen, and, therefore, the State says this instruction would be contrary to the evidence and not supported by the evidence presented.

THE COURT: All right. As indicated prior to going on the record and based on the testimony presented by [Williams], here today, [Counsel for Williams], I think most of what he testified to based on his testimony is just simply some presumptions. We didn't have any specific cases here today or examples from him to where he'd been threatened or extorted or coerced that if he didn't do these things, that certain things were going to happen. I think he's presuming that something may.happen. I don't think that's enough to warrant this instruction. I don't believe the evidence presented here today supports that.

Thereafter, the jury convicted Williams of the crime charged and he was sentenced by the trial court as set out above. This appeal followed.

In the sole point presented to this Court, we are asked to determine whether the trial court abused its discretion in refusing to give Williams' proffered duress instruction to the jury.

## Standard of Review

The trial court has discretion to submit or refuse a proffered jury instruction. *State v. Durham*, 299 S.W.3d 316, 321 (Mo.App. W.D.2009). This court's review is limited to whether the trial court abused its discretion in refusing the instruction. *Id.* "An abuse of discretion occurs if a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a careful lack of consideration." *State v. Johnson*, 231 S.W.3d 870, 877 (Mo.App. S.D.2007). In reviewing the adequacy of jury instructions, we determine whether sufficient evidence existed for that instruction, viewing the evidence and inferences in the light most favorable to the instruction and disregarding any contrary evidence. *State v. Burns*, 292 S.W.3d 501, 505 (Mo.App. S.D. 2009). "The appellate court will review the language of the instruction and the facts of the case to determine whether the instruction was denied in error." *State v. Davis*, 203 S.W.3d 796, 798 (Mo.App. W.D. 2006). "Further, this court will not reverse a conviction for mere error; the Appellant must demonstrate both the error and the prejudice arising from the error." *Id.* at 799. " 'Prejudice exists when the Appellant demonstrates that in the absence of such error a reasonable probability exists that the verdict would have been different.' " *Id.* at 798 (quoting *State v. Edberg*, 185 S.W.3d 290, 293 (Mo. App. S.D.2006)).

## Analysis

"In order for this [C]ourt to reverse the trial court's decision, the instructional error must prejudice the defendant." *Davis*, 203 S.W.3d at 800. Here, in his point relied on and in his argument in support thereof, Williams makes no allegation that he was prejudiced by the trial court's refusal to give the duress instruc-

tion. Further, we see no prejudice when Williams essentially testified that he hoped to be convicted of the crime against Presson so he could appeal and potentially get a field trip from prison at some point in the future. Lastly, section 217.385.1 particularly states that no prisoner "shall knowingly commit violence to an employee of the department [of corrections]. . . ." Williams specifically admitted at trial that he was aware Presson was a prison employee, that he was an inmate, and that he knowingly "struck [Presson] with [his] fists[.]" There was no prejudice in the trial court's denial of Williams' request to give the duress instruction. As such, we need not explore Williams' point any further. The trial court did not abuse its discretion in refusing to give Williams' proffered duress instruction to the jury. Point denied.

The judgment and sentence of the trial court is affirmed.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.