

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED103699 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 14SL-CR07287-01 |
| | ) | |
| MICHAEL B. CASEY, | ) | Honorable Steven H. Goldman |
| | ) | |
| Appellant. | ) | Filed: December 27, 2016 |

## Introduction

Michael Casey (Defendant) appeals the judgment entered upon his conviction by a jury of one count of second-degree murder and one count of armed criminal action, for which the trial court sentenced him to consecutive terms of life and 30 years in prison, respectively. Defendant argues that the trial court erred in failing to give two of his proffered instructions to the jury and in excluding expert testimony regarding false confessions. We affirm.

## Background

The State charged Defendant with one count of first-degree murder, one count of first-degree assault, and two counts of armed criminal action, resulting from a shooting on July 26, 2014. Earlier that evening, a University City high school held a reunion at Heman

Park in University City attended by approximately three to four hundred people. A fight broke out at some point, involving 15 to 20 people. Defendant was fighting a man he called "Tigga," when Mario Wallace (Victim) pulled Defendant off Tigga. Police arrived and sprayed mace in the faces of several of those involved to break up the fight. Defendant walked away with Romie Banks (Banks), one of those sprayed with mace.

Shortly after Defendant and Banks left the area, they saw Victim following them. Victim was yelling at them accusing them of attacking Victim's friend during the fight. Victim had his fists up in a fighting position and was challenging Defendant and Banks to fight. Victim pulled his shirt up and said "I don't have anything." Pamela Christian (Christian) was nearby and saw Victim yelling at Defendant and Banks. She told Victim not to fight, and Victim responded, "Yes, ma'am" and started to walk away. Defendant was standing next to Banks' car. Christian saw Defendant reach into the car, pull out a gun, and start shooting in Victim's direction. Then Defendant and Banks got into the car and drove away. Victim later died from a gunshot wound to his chest.[1]

On August 7, 2014, Police arrested Defendant and brought him to the police station for questioning and to participate in a live lineup. They gave Defendant Miranda[2] warnings, and Defendant signed a waiver form. Defendant initially denied being involved in either the fight or the shooting. He then admitted he was involved in the fight and that Victim pulled Defendant off Tigga. He later admitted that he walked with Banks and that the gun that killed Victim came from Banks' car, but Defendant said Banks was the one who shot Victim.

---

[1] Another man, Dejuan Walker (Walker), was shot in the knee, but he testified he did not see where the shots came from. The charges of first-degree assault and an associated armed criminal action stemmed from this injury to Walker, but the jury acquitted Defendant of these charges.
[2] Miranda v. Arizona, 396 U.S. 868 (1969).

2

Police took a break from questioning Defendant and placed him in a live lineup. Christian viewed the lineup and identified Defendant as the shooter. She became emotional when she identified him, and she said she was sure Defendant was the person who shot Victim. Police resumed questioning Defendant and then took a later break to take Defendant's fingerprints. After that, they returned to the room and Defendant confessed to shooting Victim. The next day, Defendant participated in a video reenactment of the crime. Defendant grabbed the gun out of the car and fired it at Victim, who he said was running toward him. Defendant said on the video that he was sorry for what happened and wished he could take it back.

At trial, the trial court gave verdict directing instructions for the charged crime of first-degree murder, as well as for the lesser-included charges of second-degree murder and involuntary manslaughter. Defendant requested an instruction for voluntary manslaughter, which the trial court denied. Defendant also requested that the trial court instruct the jury regarding eyewitness testimony using a new Missouri Approved Instruction (MAI) that had not yet become effective, and the trial court also denied this request, utilizing a current MAI regarding eyewitness testimony instead. The jury convicted Defendant of second-degree murder and armed criminal action. The trial court sentenced Defendant to consecutive terms of life and 30 years in prison, respectively. This appeal follows.

## Discussion

Defendant raises three points on appeal. First, he argues that the trial court erred in refusing his proffered verdict directing instruction for voluntary manslaughter. Second, he argues the trial court abused its discretion in refusing his proffered instruction regarding eyewitness testimony. Finally, Defendant argues the trial court abused its discretion in

3

excluding Defendant's expert's testimony regarding risk factors for false confessions in interrogation procedures. We discuss each in turn.

Point I

Defendant argues the trial court erred in refusing his requested verdict directing instruction for voluntary manslaughter because the evidence supported a finding that he committed the murder under the influence of sudden passion arising from adequate cause. We disagree.

In determining whether the trial court erred in refusing an instruction, we view the evidence in the light most favorable to Defendant. State v. Avery, 120 S.W.3d 196, 200 (Mo. banc 2003). "A jury instruction for a lesser-included offense is required when the evidence 'provides a basis both for the acquittal of the greater offense and the conviction of the lesser offense.'" State v. Johnson, 284 S.W.3d 561, 575 (Mo. banc 2009) (quoting Avery, 120 S.W.3d at 205).

Voluntary manslaughter is a lesser-included offense of first-degree murder.[3] Section 565.025.2(1)(b).[4] A person commits voluntary manslaughter by "caus[ing] the death of another person under circumstances that would constitute murder in the second degree . . . except that he caused the death under the influence of sudden passion arising from adequate cause." Section 565.023.1(1). The jury found Defendant guilty of second-degree murder, and Defendant argues that the court should have instructed the jury to

---

[3] We note, however, that it is not a nested offense, for which a trial court is required to instruct when requested by a defendant. State v. Payne, 488 S.W.3d 161, 164 (Mo. App. E.D. 2016) (discussing applicability of State v. Jackson, 433 S.W.3d 390 (Mo. banc 2014); concluding voluntary manslaughter instruction is not nested lesser-included offense of first-degree or second-degree murder and thus jury cannot convict defendant of voluntary manslaughter simply by disbelieving part of evidence supporting first or second-degree murder charge).

[4] All statutory references are to RSMo. (2000), unless otherwise indicated.

4

consider whether the additional element of sudden passion arising from adequate cause was present here.

"Sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim . . . which passion arises at the time of the offense and is not solely the result of former provocation." Section 565.002(7). "Adequate cause" is "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." Section 565.002(1). The defendant must commit the offense "in sudden passion, and not after there has been time for the passion to cool." State v. Redmond, 937 S.W.2d 205, 208 (Mo. banc 1996). "Words alone, no matter how opprobrious or insulting, are not sufficient to show adequate provocation." Id. "A manslaughter instruction is typically justified when the victim perpetrates a battery upon the defendant." State v. Arnel, 846 S.W.2d 245, 247 (Mo. App. E.D. 1993).

Defendant argues that the evidence shows that in the immediate aftermath of the physical fight in the park, Victim "came at" Defendant and Banks with his fists raised and wanting to fight. Defendant argues that because Victim was shot in the chest, this shows he was coming toward Defendant when Defendant shot him, rather than walking away. Defendant, though maintaining that Banks was the one who shot Victim, testified that they reached the car and that Defendant was seated in the car before Victim caught up with them.

Even viewing the evidence in the light most favorable to Defendant, there is no evidence here of a sudden passion on the part of Defendant or of adequate cause. Any sudden passion that may have been present during the initial fight is not sufficient because

5

Defendant and Banks walked away from this initial fight before later encountering Victim again. See, e.g., Arnel, 846 S.W.2d at 247-48 (no evidence showed victim's state of mind or that victim advanced toward defendant in threatening manner, rather defendant left room, returned with gun, and shot victim). The evidence regarding Victim's pursuit of Defendant and Banks indicates he used words to try to get them to fight, but he was also at a distance from them. Additionally, there was no evidence Victim brandished a weapon. See Redmond, 937 S.W.2d at 209 (citing cases in which victim's displaying of weapon during argument was sufficient evidence of provocation to submit voluntary manslaughter instruction). In fact, the evidence here was that Victim let them know he did not have a weapon and wanted to fight without weapons. Finally, the fact that Victim was shot in the chest is not sufficient to create an inference of sudden passion.

Given the record here, we conclude the trial court did not err in refusing Defendant's proffered instruction for voluntary manslaughter because the evidence did not support a finding that he acted under the influence of sudden passion arising from adequate cause. Point denied.

### Point II

Defendant argues that the trial court abused its discretion in refusing his proffered instruction regarding eyewitness testimony. We disagree.

Our review of a trial court's decision to refuse a proffered instruction is for abuse of discretion. State v. Bush, 372 S.W.3d 65, 69 (Mo. App. W.D. 2012). "An abuse of discretion occurs if a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a careful lack of consideration." State v. Williams, 375 S.W.3d 920, 924 (Mo. App. S.D. 2012) (internal

6

quotation omitted). We view the evidence in the light most favorable to the instruction. Id. However, we will not reverse a conviction upon a showing of mere error; Defendant must demonstrate that prejudice resulted from the error. Id. (quoting State v. Davis, 203 S.W.3d 796, 798 (Mo. App. W.D. 2006)). Prejudice exists when but for the error, there is a reasonable probability the verdict would have been different. Williams, 375 S.W.3d at 924 (internal quotations omitted).

Here, Defendant offered an instruction based on a provisional version of an MAI instruction that was set to become effective on January 1, 2016, just over two months after Defendant's trial took place. The proffered instruction began as follows:

> Testimony has been introduced identifying [Defendant] as the person observed at the time of the offense. It is up to you to decide whether the witness identification of [D]efendant is reliable and believable or whether it was based on a mistake.

The instruction went on to discuss several factors the jury should take into consideration, including the conditions such as distance, lighting, and other aspects of the viewing environment; the amount of time the witness had to observe a person; what was within the witness' view and focus, such as the presence of a weapon, which can draw focus to the weapon away from the perpetrator; the duration of the crime; the witness' age or eyesight; any stress, illness, injury, or fatigue of the witness; the witness' level of certainty; the length of time between the event and the identification; the description the witness gave; the circumstances under which the out-of-court identification was made; and the lineup procedure in which the witness identified Defendant.

The trial court refused this instruction, noting that the instruction was confusing and that the jury could "determine whether an eyewitness is reliable or not." Additionally,

the court did instruct the jury regarding the believability of witnesses, based on the MAI in effect at the time of trial, MAI-CR 3d 302.01:

> In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all of the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

Note 3 of the Notes on Use following MAI-CR 3d 302.01 (2014) states, "Except as may be specifically provided for elsewhere in MAI-CR, no other or additional instruction may be given on the believability of witnesses, or the effect, weight, or value of their testimony." See Bush, 372 S.W.3d at 70-71.

The trial court did not abuse its discretion under the circumstances here. Rather, it followed the applicable MAI at the time of trial as well as the Notes on Use. See State v. Price, 513 S.W.2d 392, 396 (Mo. 1974) (finding no error where trial court refused future MAI not in effect at time of trial). Additionally, Missouri courts have historically rejected instructions similar to the one Defendant proffered here, which Defendant argues is similar to the instruction used by federal courts of appeal, from United States v. Telfaire, 469 F.2d 552 (D.C. Cir. 1972). See State v. Gilmore, 797 S.W.2d 802, 809-10 (Mo. App. W.D. 1990) (noting "Missouri courts have unequivocally rejected the argument that it is error for a trial court to refuse to submit additional cautionary instructions to the jury concerning eyewitnesses modeled after those contained in Telfaire"). Thus, the trial court exercised

8

its discretion not to utilize a provisional instruction taking such a departure from past practice, while that instruction was subject to revision before being officially adopted.[5]

Moreover, Defendant points to no specific part of his proffered instruction that was either not covered by the given instruction or caused prejudice to him by its absence. Defendant's counsel argued in closing that Christian's testimony was unreliable for several reasons and referred to multiple aspects of her testimony to illustrate his argument. The trial court instructed the jury it was their responsibility to determine the believability of witnesses. Besides the fact that the trial court did not abuse its discretion, Defendant has given no indication that he was prejudiced by the trial court's decision here. Point denied.

## Point III

In his final point on appeal, Defendant argues that the trial court abused its discretion in excluding expert testimony regarding interrogation procedures and risk factors for false confessions. We disagree.

The admission or exclusion of expert testimony is a matter within the discretion of the trial court. State v. Davis, 32 S.W.3d 603, 608 (Mo. App. E.D. 2000). Thus, we will reverse only where the trial court abuses its discretion, meaning "when the ruling is clearly against the logic of the circumstances or where it is arbitrary and unreasonable." Id. Again, we review for prejudice, and not mere error, reversing only "if the error was so prejudicial that it deprived the defendant of a fair trial." State v. Morrow, 968 S.W.2d 100, 106 (Mo. banc 1998).

---

[5] The Missouri Supreme Court did in fact modify the instruction before it became official in an order vacating MAI-CR 310.02 adopted on March 2, 2015, and adopting a different version. Order, December 16, 2015, In re: Additions to MAI-CR 3d, available at http://www.courts.mo.gov/page.jsp?id=95087.

9

Here, Defendant sought to admit the testimony of Dr. Charles Honts, who would have testified that the police interrogation of Defendant here presented several risk factors for a false confession. The trial court initially stated the court would likely exclude this testimony. At trial, Defendant renewed his request to call Dr. Honts to testify. At that time, the trial court made its ruling excluding this evidence, noting that "the jury can see all this on videotape as opposed to just having testimony about it, which even gives them a better ability to see the circumstances of the statements that are made by [Defendant] and by the police officers."

The trial court did not abuse its discretion in excluding this evidence. Missouri courts have upheld similar exclusions of evidence. In State v. Wright, the defendant sought to introduce expert testimony on the issue of false confessions and the factors that contributed to such a confession. 247 S.W.3d 161, 166 (Mo. App. S.D. 2008). The defendant additionally sought to have the same expert testify that the defendant's own personality traits contributed to his confession. Id. The trial court excluded all of this testimony, and the appellate court found no abuse of discretion, concluding that the proffered testimony would invade the province of the jury because it related to the credibility of the defendant's confession. Id. at 168 (citing Davis, 32 S.W.3d at 608-09) (affirming exclusion of expert testimony regarding the correlation between interrogation techniques and false confessions because testimony invaded jury's province to make credibility determinations).

The circumstances are similar here. Defendant sought to introduce evidence regarding interrogation procedures and the risk factors for false confessions so that Defendant could draw support for his testimony that he falsely confessed in light of the

10

interrogation utilized here. The trial court had discretion to admit or exclude this evidence as it saw fit under the circumstances of this case, and the trial court noted that here, the jurors were able to view the interrogation for themselves and determine Defendant's credibility. We cannot say the trial court's choice to exclude the expert testimony was an abuse of its discretion. Point denied.

## Conclusion

The trial court did not err in refusing to instruct the jury on voluntary manslaughter as a lesser-included offense because the evidence did not support a finding that Defendant killed Victim under the influence of sudden passion arising from adequate cause. Additionally, the trial court did not abuse its discretion in refusing a cautionary instruction regarding eyewitness testimony that was not a mandatory MAI at the time of trial. Finally, the trial court did not abuse its discretion in excluding Dr. Honts' testimony regarding false confessions. We affirm.

_____
Gary M. Gaertner, Jr., Judge

James M. Dowd, P. J., concurs.
Kurt S. Odenwald, J., concurs.

11