

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| MICHAEL B. CASEY, | ) | No. ED112300 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | Cause No. 17SL-CC03237 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Stanley J. Wallach |
| | ) | |
| Respondent. | ) | FILED: April 15, 2025 |

## Introduction

Michael B. Casey appeals the judgment denying his Rule 29.15[1] amended motion for post-conviction relief. Casey argues the motion court clearly erred in denying his claims that appellate counsel was ineffective for (1) failing to directly challenge the voluntariness of Casey's confession and (2) for failing to challenge admitted demonstrative evidence, and (3) that trial counsel was ineffective for adducing evidence that a non-testifying witness identified Movant. We disagree because appellate counsel was not ineffective for failing to bring non-meritorious claims on appeal and trial counsel's cross-examination was sound trial strategy. The motion court's judgment is affirmed.

---

[1] All rule references are to the Missouri Supreme Court Rules (2023).

<u>Factual and Procedural Background</u>

On July 26, 2014, Casey was involved in a shooting at Heman Park following a University City High School all-class picnic.  P.C., an attendee of the picnic, witnessed Casey, R.B., and the Victim, get into a verbal altercation in the parking lot.[2]  P.C. deescalated the situation and the Victim began to walk away.  Casey then grabbed a firearm from a nearby Pontiac Grand Prix, shot, and killed the Victim before fleeing the scene with R.B.

Detectives arrested Casey, advised him of his *Miranda*[3] rights, and began interrogating him on August 7, 2014 at 3:20 p.m.  He participated in live lineups at approximately 6:00 p.m. and 7:50 p.m.  P.C. identified him as the shooter at the 7:50 p.m. lineup.  Casey was taken for fingerprinting between 9:30 and 10:00 p.m.  Subsequently, he observed Detective N enter the charge of first-degree murder into the computer system.  Casey then confessed to shooting the Victim.  The interrogation ended around 10:00 p.m.  Casey was given beverages and bathroom breaks when needed throughout the interrogation, which lasted approximately seven hours.

Following his confession, Casey spent the night in a holding cell.  On the morning of August 8, 2014, detectives gave him breakfast and renewed his *Miranda* rights before taking him to the crime scene.  Casey then performed a recorded reenactment of the events surrounding the July 26, 2014 shooting.  No murder weapon was ever recovered.

The State charged Casey with first-degree murder, first-degree assault, and two counts of armed criminal action.  The case proceeded to jury trial on October 19, 2015.  At trial, the State introduced P.C.'s eyewitness account as well as Casey's confession to establish the type of firearm used.  During the direct examination of S.K., the State introduced a similar "MAC-10" handgun

---

[2]  The personal identifying information of the victim and witnesses has been omitted pursuant to section 509.520, RSMo (Cum. Supp. 2023).

[3] *Miranda v. Arizona*, 396 U.S. 868 (1969).

of the same make and model. Casey objected to the use of this demonstrative evidence, arguing it was more prejudicial than probative and that a picture of the firearm would suffice to prove the weapon type used. The State responded that the firearm was offered for the purpose of demonstrating that it could be fired one-handed. The trial court overruled the objection, and the firearm was presented to the jury.

Casey's trial counsel attempted to cross-examine Detective N about the interplay between Casey's multiple lineups and his confession. Specifically, counsel asked about the lineup conducted at 6:00 p.m. in which P.C. was not involved. In response, and without provocation, Detective N stated that another witness, L.W., identified Casey as the shooter. Counsel objected to the statement as hearsay; the court sustained the objection and immediately instructed the jury to disregard Detective N's statement.

The jury returned guilty verdicts for the lesser-included offense of second-degree murder and one count of armed criminal action. Casey appealed, arguing that the trial court abused its discretion in excluding a defense expert's testimony regarding risk factors for false confessions in interrogation procedures. *State v. Casey*, 517 S.W.3d 570, 572 (Mo. App. E.D. 2016). This Court affirmed the convictions and held that the trial court acted within its discretion in excluding defendant's proffered expert testimony. *Id.* at 576.

Casey then filed a Rule 29.15 amended motion for post-conviction relief. On April 18, 2023, the motion court held an evidentiary hearing where both trial and appellate counsel testified regarding their representation. Trial counsel testified that he moved to suppress Casey's confessions, challenging their voluntariness, and hired an expert on the issue but the trial court overruled the motion to suppress. He further testified that he objected to admitting Casey's custodial statements and the use of the "MAC-10" as a demonstrative exhibit and the trial court

overruled his objection and allowed demonstrative use of the "MAC-10." Finally, trial counsel testified that he expected Detective N would reference L.W.'s identification of Casey as the shooter if asked about the lineups, but his strategy was to show the "interplay" between the lineups and Casey's confession.

Next, appellate counsel testified that she raised as a primary issue on direct appeal, the exclusion of the defense expert, who had been offered to testify on interrogation techniques and false confessions. Appellate counsel admitted that she did not raise the issue of the confession itself, but could not recall her reasoning for doing so at the time of the hearing. Appellate counsel also had no memory of why she chose not to raise on appeal the admission of the handgun during trial.

Both trial and appellate counsel had trouble recalling their strategies given the extended time between the trial, appeal, and motion hearing. The motion court found them credible to the extent that they remembered; however, the court considered their testimony about how they might have changed their strategies to be speculative and without weight.

### Standard of Review

Our review of denial of a Rule 29.15 motion for post-conviction relief is limited to determining whether the motion court's findings and conclusions are clearly erroneous. *Webb v. State*, 334 S.W.3d 126, 128 (Mo. banc. 2011) (per curiam); Rule 29.15(k). A judgment is clearly erroneous when, "upon review of the complete record, there is a definite and firm impression that a mistake has been made." *Hefley v. State*, 626 S.W.3d 244, 248 (Mo. banc 2021).

4

<u>Discussion</u>

To be eligible for post-conviction relief due to ineffective assistance of counsel, a movant must satisfy the two-prong *Strickland*[4] test. *Anderson v. State*, 564 S.W.3d 592, 600 (Mo. banc 2018). Under *Strickland*, a movant must show by a preponderance of evidence that (1) counsel's performance did not meet that of a reasonably competent attorney, and (2) that because of counsel's actions, movant was prejudiced. *Id.* (citing *Strickland*, 466 U.S. at 687). If a movant is unable to establish either prong of the *Strickland* test, then we need not consider the other, and the ineffective-assistance claim must fail. *Washington v. State*, 681 S.W.3d 347, 354 (Mo. App. E.D. 2023).

"A [m]ovant must overcome the strong presumption that trial counsel's conduct was reasonable and effective." *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013). Additionally, a movant must discern "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009). Trial strategy decisions can *only* be ineffective if the decision was unreasonable. *Id.* "Strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable." *Dorsey v. State*, 448 S.W.3d 276, 287 (Mo. banc 2014).

"To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Tisius v. State*, 519 S.W.3d 413, 431 (Mo. banc 2017). However, appellate counsel does not have a duty to raise every conceivable claim in their motion for new trial. *Id.* at 431-32 (citing *Storey v. State*, 175 S.W.3d 116, 148 (Mo.

---

[4] *Strickland v. Washington*, 466 U.S. 668 (1984).

5

banc 2005)). If a movant proves ineffective assistance of counsel, they must then show that they were prejudiced by counsel's actions. *Johnson*, 406 S.W.3d at 899. "Prejudice occurs when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002)); s*ee also Strickland*, 466 U.S. at 694.

### *Point I – The Confession*

Casey asserts the motion court clearly erred in denying his 29.15 motion because appellate counsel was ineffective in failing to challenge the voluntariness of his confession on direct appeal. Considering the totality of the circumstances, the record indicates that Casey's confession was voluntary. Therefore, appellate counsel was not ineffective as she has no duty to raise a meritless claim on appeal. *See McAllister v. State*, 643 S.W.3d 124, 136 (Mo. App. E.D. 2022) (citing *Tisius*, 519 S.W.3d at 432).

Individuals must be made aware of their Fifth Amendment[5] right to remain silent before being questioned or interrogated when under custodial arrest. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The waiver of *Miranda* rights, while not dispositive of the question of the voluntariness of a statement, is an important consideration; other factors to consider include the movant's physical and mental state, the length of questioning, the presence of police coercion or intimidation, and the withholding of food, water, or other physical needs. *State v. Dixon*, 332 S.W.3d 214, 218 (Mo. App. E.D. 2010). Regarding the length of interrogation, providing breaks during the interrogation is a factor when considering whether coercion is present. *State v. Dennis*, 153 S.W.3d 910, 924 (Mo. App. W.D. 2005). When determining whether a movant's confession resulted from improper coercion, this Court considers a range of factors, including the movant's

---

[5] U.S. Const. amend. V.

6

"age, experience, intelligence, gender, lack of education, infirmity, and unusual susceptibility to coercion." *State v. Faruqi*, 344 S.W.3d 193, 203 (Mo. banc 2011).

Casey fails to demonstrate that any outcome-determinative violation of his *Miranda* rights occurred. Detectives informed Casey of his *Miranda* rights on three separate occasions: once before the interrogation began on August 7, 2014 and then twice on August 8, 2014—in the morning before performing the reenactment and then again in the evening before he identified the Grand Prix as the getaway car. Each time, Casey acknowledged his *Miranda* rights, signed waiver forms, and continued to talk willingly with the detectives, even requesting that Detective N not leave the interrogation on August 7, 2014.

Casey testified during trial that he was stressed out and nervous during the interrogation, in part because he did not think the police believed him. Yet, his mental state cannot be attributed to the actions taken by the detectives to establish his confession was involuntary. The totality of the circumstances demonstrates the tactics used by detectives did not deprive Casey of his free will. *See State v. Lawson*, 693 S.W.3d 82, 104 (Mo. App. E.D. 2023). Detectives interviewed Casey for approximately seven hours. However, with the breaks, beverages, a full night's rest, and breakfast before his renewed confession and reenactment the next morning, there is no evidence to indicate detectives used coercion or intimidation to elicit the confession. *See id.*

Finally, Casey was no inexperienced and vulnerable juvenile at the time of this murder. He was an adult with prior felony convictions for unlawful use of a weapon and resisting arrest. Detective N described Casey as being of average intelligence. Detectives advised him of his *Miranda* rights numerous times. Casey acknowledged and knowingly waived those rights. The total circumstances surrounding his confession do not indicate any coercion. The motion court did not err in rejecting this claim. *See Webb*, 334 S.W.3d at 128; Rule 29.15(k). Point I is denied.

7

*Point II – The Firearm*

Casey next alleges the motion court clearly erred in denying his 29.15 motion because appellate counsel's failure to challenge on direct appeal the demonstrative use of an unrelated firearm was ineffective assistance of counsel. We disagree because a claim of error based on this use of demonstrative evidence would not have been meritorious on appeal. Showing the "MAC-10" to the jury was logically relevant as its ability to be fired with one hand supports the accuracy of P.C.'s testimony and Casey's reenactment.

"Demonstrative evidence, including a weapon, is admissible if the evidence is both legally and logically relevant." *Shockley v. State*, 579 S.W.3d 881, 909 (Mo. banc 2019) (quoting *State v. Brown*, 337 S.W.3d 12, 15 (Mo. banc 2011)). Logical relevance is the tendency "to make the existence of a material fact more or less probable." *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010). Legal relevance is the assessment of probative value relative to the risk of "unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* "Therefore, when assessing the relevance of demonstrative evidence, a court must ensure that the evidence is a fair representation of what is being demonstrated and that it is not inflammatory, deceptive or misleading." *Brown*, 337 S.W.3d at 15.

The use of a firearm other than the precise one used to commit the crime as evidence is not unprecedented. In *Shockley*, the State introduced a rifle similar to the unrecovered murder weapon. 579 S.W.3d at 909. The Supreme Court of Missouri held that trial counsel's failure to object to the use of the weapon during trial was not ineffective assistance because the facts in the case proved the firearm shown in court was the same make and model as the firearm used in the murder. *Id.*

Thus, Casey cannot show prejudice resulting from appellate counsel's decision as no reasonable probability of a different outcome exists based on this non-meritorious claim. Here, as

8

in *Shockley*, the firearm presented to the jury was a fair representation of the murder weapon. In his initial interview, during his confession, and throughout the reenactment, Casey conceded that a "MAC-10" with a 30-round magazine was used in the murder. For her part, P.C. testified that the picture of the "MAC-10" shown in court depicted the same type of firearm used in the murder.

The cumulative testimony and Casey's confession established that the demonstrative "MAC-10" matched the murder weapon before it was shown to the jury. The trial court did not err in allowing the evidence to be admitted and arguing otherwise on appeal would have been futile. Point II is denied.

*Point III – The Cross-Examination*

Finally, Casey argues the motion court clearly erred in denying his post-conviction claim that trial counsel was ineffective when he adduced evidence that a non-testifying witness identified Movant as the shooter. We disagree.

"[R]easonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Ford v. State*, 334 S.W.3d 679, 682 (Mo. App. S.D. 2011) (alteration in original) (quoting *Cole v. State,* 152 S.W.3d 267, 270 (Mo. banc 2004)). The extent of cross-examination is a matter of trial strategy. *Harding v. State*, 613 S.W.3d 522, 530 (Mo. App. E.D. 2020). Additionally, instructing the jury to disregard inadmissible evidence or an improper argument is a sufficient remedy because we presume the jury follows the court's instructions. *State v. McClendon*, 477 S.W.3d 206, 215 (Mo. App. W.D. 2015) (citing *State v. Shaffer,* 439 S.W.3d 796, 801 (Mo. App. W.D. 2014)).

Casey is unable to show that trial counsel performed ineffectively as he employed reasonable trial strategy in his cross-examination of the witness. Trial counsel questioned Detective N on the timing of the lineups, interrogation, and the confession notwithstanding the court's exclusion of the expert's testimony. Despite the inability to call the expert witness, trial

9

counsel attempted to highlight the interplay of these events and suggest to the jury that the confession was coerced.

While we need not address the second prong of the *Strickland* test, we further find that Casey was not prejudiced by trial counsel's line of questioning. Detective N spontaneously testified to hearsay when answering beyond trial counsel's question. In response, the court struck the statement from the record and instructed the jury to disregard the comment. We must presume they did so. *Id.* Point III is denied.

Conclusion

Finding no error in the motion court's judgment, we affirm.

_____<br>Virginia W. Lay, J.

Lisa P. Page, P.J., concurs.<br>
Rebeca Navarro-McKelvey, J., concurs.